No. 03-785

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 274

TOWN OF CLYDE PARK,

          Plaintiff and Appellant,

    v.

CINDY E. YOUNKIN, Esq., MOORE, O'CONNELL
& REFLING, P.C., and DOES 1-5,

          Defendants and Respondents.

APPEAL FROM:    District Court of the Sixth Judicial District,
                    In and for the County of Park, Cause No. DC 2003-51,
                    The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Kevin S. Brown; Fred Paoli, Jr., Paoli & Brown, P.C., Livingston, Montana

        For Respondent:

            Elizabeth S. Baker; Michael F. McMahon, Hughes, Kellner, Sullivan &
            Alke, PLLP, Helena, Montana

                 Submitted on Briefs:  March 30, 2004

                         Decided:  September 28, 2004

Filed:

                                            
                                   Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Town of Clyde Park (Clyde Park) appeals from an Order of the Sixth Judicial District Court, Park County, granting summary judgment in favor of the Respondents, Cindy Younkin (Ms. Younkin), Moore, O'Connell & Refling, P.C., and Does 1-5 (MOR). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On or about July 14, 1994, Clyde Park retained MOR to defend against a claim by Patty Pinkerton, n/k/a Patty Russell (Ms. Russell). Ms. Russell objected to the town's water rights claims filed with the Water Court in April 1982. Ms. Younkin represented Clyde Park on behalf of MOR. In accordance with Ms. Younkin's recommendations, Clyde Park entered into a final settlement agreement with Ms. Russell in January 1996.

¶3 The issues regarding the parties' respective water rights continued, with Ms. Russell complaining to the Clyde Park town council that she was not receiving her water and that the town was misappropriating the water. In order to determine how much water Clyde Park was allowed to use within certain time periods, Jon M. Hesse (Mr. Hesse), in his official capacity as Clyde Park's attorney and at the behest of Clyde Park, contacted Ms. Younkin and requested a copy of MOR's file so he could "understand historically what had been done with respect to the Town water rights." MOR provided the requested file to Mr. Hesse on June 3, 1998. Based upon Mr. Hesse's investigation into how much water it could use, on August 8, 1998, Clyde Park entered into an agreement to lease Ms. Russell's water.

¶4 On April 30, 1999, Ms. Russell commenced a lawsuit against Clyde Park claiming it

2

had wrongfully appropriated her water for an approximate ten year time period. When Clyde Park's insurance carrier investigated that claim, it determined there were several arguments in Clyde Park's favor, one being that the water rights may have been previously abandoned by Ms. Russell.

¶5     Over the following year, negotiations between Clyde Park and Ms. Russell continued. Clyde Park considered either entering into another agreement with Ms. Russell or drilling additional wells. When negotiations failed, Clyde Park decided to drill wells and hired an engineering firm to design a new water system. In order to qualify for grants and loans to build the new system, as well as to better ascertain whether it was violating its agreement with Ms. Russell, Clyde Park had to determine whether its water rights were sound. In order to do so, Clyde Park retained Leanne Schraudner (Ms. Schraudner), a water rights expert, to conduct a review of its water rights and make recommendations about whether to drill additional wells. Mr. Hesse forwarded the MOR file to Ms. Schraudner.

¶6     On June 2, 2000, Mr. Hesse received a letter from Ms. Schraudner that, if accurate, outlined possible legal theories Clyde Park could have asserted in earlier stages. Ms. Schraudner's report alleged, *inter alia*, that Clyde Park had enjoyed priority over Ms. Russell's claims and could have acquired all of the rights it subsequently stipulated away during the earlier settlement agreement. The report was based upon Ms. Schraudner's "review of the historical documentation and file presented to [her] . . . some limited discussion with counsel [sic] members and the file provided to [her] by [Mr. Hesse], which [he] represented to be the Moore Law Firm file regarding the City of Clyde Park water rights

3

. . . [and] a review of the 1951 Water Resource Survey."

¶7 On May, 30, 2003, Clyde Park initiated a malpractice action against MOR and Ms. Younkin asserting that, by agreeing to settle with Ms. Russell, it had unknowingly waived its claim to a larger water right and that, had Ms. Younkin properly advised the town of its priorities, its rights under adverse possession, and its claim of abandonment against Ms. Russell, it would have prevailed in any water rights litigation against Ms. Russell. On June 11, 2003, Clyde Park filed an amended complaint commencing its action against Ms. Younkin. On July 23, 2003, MOR moved for summary judgment against Clyde Park on the ground that Clyde Park's complaint was barred by the three-year statute of limitations set forth in § 27-2-206, MCA. The parties waived oral argument.

¶8 On August 21, 2003, the District Court granted MOR's motion for summary judgment, ruling that Clyde Park had actual or constructive knowledge of the facts underlying Ms. Younkin's alleged malpractice on June 3, 1998, when Mr. Hesse received the MOR file. Accordingly, the District Court concluded that the statute of limitations expired three years later, on June 4, 2001. Clyde Park appeals from the District Court's ruling and asserts instead that it first discovered all of the facts when it received Ms. Schraudner's opinion, which tolled the statute of limitations until June 2, 2000. The issue on appeal is whether the District Court erred in granting summary judgment based upon the application of the three-year statute of limitations set forth in § 27-2-206, MCA.

**STANDARD OF REVIEW**

¶9 We review a District Court's summary judgment ruling *de novo*. *Cape-France*

4

*Enterprises v. Estate of Peed*, 2001 MT 139, ¶ 13, 305 Mont. 513, ¶ 13, 29 P.3d 1011, ¶ 13. We apply the same criteria applied by the District Court under Rule 56, M.R.Civ.P., *Stutzman v. Safeco Ins. Co.* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34. The movant must demonstrate both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *MacKay v. State of Montana*, 2003 MT 274, ¶ 14, 317 Mont. 467, ¶ 14, 79 P.3d 236, ¶ 14. Any factual inferences which can be drawn must be resolved in favor of the nonmoving party. *Morton v. M-W-M, Inc.* (1994), 263 Mont. 245, 249, 868 P.2d 576, 579. If no genuine factual issues exist, this Court then reviews the district court's conclusions of law to determine whether the court's interpretation of the law is correct. *MacKay*, ¶ 14.

## DISCUSSION

¶10    The statute of limitations applicable to legal malpractice actions, § 27-2-206, MCA, provides:

> An action against an attorney licensed to practice law in Montana . . . based upon the person's alleged professional negligent act or for error or omission in the person's practice must be commenced within 3 years after the plaintiff discovers *or through the use of reasonable diligence should have discovered* the act, error, or omission, whichever occurs last. . . . [Emphasis added.]

¶11    When a statute of limitations issue involving a legal malpractice claim relates to actual discovery, the test is knowledge of the facts essential to the malpractice claim, rather than discovery of legal theories. *Johnson v. Barrett*, 1999 MT 176, ¶ 11, 295 Mont. 254, ¶ 11, 983 P.2d 925, ¶ 11. When the statute of limitations issue involves the time at which the plaintiff, through the use of reasonable diligence, should have discovered the facts, the test

5

is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation. *Johnson*, ¶ 11.

¶12   The critical question in this matter is when Clyde Park obtained knowledge of the essential facts necessary to put it on inquiry of possible problems with Ms. Younkin's representation, not when it obtained knowledge of its legal theories. *See Johnson*, ¶ 11. Clyde Park contends that it did not discover the facts concerning its missed legal theories of adverse possession and abandonment until it received Ms. Schraudner's opinion on June 2, 2000.   The District Court disagreed and determined that Clyde Park had information sufficient to provide knowledge of the facts necessary for a malpractice claim when Mr. Hesse received the MOR file on June 3, 1998.

¶13   Clyde Park requested the MOR file after being informed by Ms. Russell that there were possible legal issues that were not resolved at the time of the settlement.  Upon receipt of the file, Mr. Hesse, as the city's attorney, was placed on inquiry, and had available to him sources from which he could have investigated the problem further.  In fact, the same file and available information resulted in Ms. Schraudner's report which Clyde Park maintains started the statute of limitations.  The MOR file, some limited discussions with council members, and a review of a water resource survey was enough for Ms. Schraudner to rely upon, and through reasonable diligence, provide an opinion to Clyde Park.

¶14   Clyde Park also contends that Mr. Hesse's representation in this matter was narrow in that he obtained the MOR file only to review two documents contained therein, in order

6

to ascertain whether Clyde Park was indeed violating their settlement agreement with Ms. Russell. Thus, the remainder of the contents of the MOR file fell outside of the scope of Mr. Hesse's representation, so the file could not provide Clyde Park with the knowledge necessary for its malpractice claim. Clyde Park further asserts that because Mr. Hesse is not a water law attorney and the MOR file did not mention abandonment or adverse possession, it could not have discovered the legal theories it relies upon in this action.

¶15 However, the statute of limitations issue does not relate to the discovery of legal theories. *See Johnson*, ¶ 11. Clyde Park had knowledge of the facts essential to its malpractice claim when Mr. Hesse requested the MOR file. He requested the file in response to Ms. Russell's objections and in order to familiarize himself with the history of Clyde Park's water rights so he could evaluate and negotiate a lease on behalf of the town. To claim he did not look, or did not have the expertise to know what to look for, does not toll the legal malpractice statute of limitations. The issue does not turn on Mr. Hesse's expertise in various legal matters. For the purposes of tolling the statute of limitations, it only matters that Clyde Park had all of the necessary information on June 3, 1998, when it had in its hands the MOR file which put it on notice of a possible malpractice claim.

¶16 As with any decision affirming a statute of limitations bar, we do not reach the merits of Clyde Park's allegation of malpractice. Clyde Park's action is barred by the statute of limitations as § 27-2-206, MCA, plainly requires that a malpractice action be commenced within three years after the plaintiff discovers or should have discovered the negligent act, error, or omission. Consequently, Clyde Park was required to commence its alleged legal

malpractice claim against MOR and Ms. Younkin by June 4, 2001. It missed that date by approximately two years. The District Court was correct in its determination that no genuine issues of material fact exist and its interpretation that MOR and Ms. Younkin are entitled to judgment as a matter of law.

¶17    The District Court's Order is affirmed.


/S/ JIM REGNIER


We Concur:


/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE

8