FILED

October 28 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0723

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 287

TERENCE R. PASSMORE,

　　　　Plaintiff and Appellant,

　v.

HERMAN A. WATSON, III,

　　　　Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Sixth Judicial District, In and For the County of Park, Cause No. DV 13-110 Honorable Brenda Gilbert, Presiding Judge |

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Terence R. Passmore (self-represented); Shelby, Montana

　　　　For Appellee:

　　　　　　Michael F. McMahon, Denny K. Palmer, McMahon, Wall & Hubley, PLLC; Helena, Montana

Submitted on Briefs: September 10, 2014
Decided: October 28, 2014

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Terence R. Passmore (Passmore) appeals from the order of the Sixth Judicial District Court, Park County. The District Court granted summary judgment to Herman A. Watson, III (Watson) and dismissed Passmore's legal malpractice claim against Watson. The parties present a single issue for review:

¶2 *Did the District Court err in granting Watson's motion for summary judgment?*

¶3 We affirm.

## FACTUAL BACKGROUND

¶4 In April of 2006, the State of Montana charged Passmore with multiple counts of sexual assault and sexual intercourse without consent based on evidence that he molested two minor sisters while pastor of the Livingston Church of God. Watson defended Passmore during the criminal trial. Part of the defense strategy was to question the sisters' veracity by introducing evidence of statements they made during an internal church inquiry into the allegations. According to Passmore, their statements in the church tribunal contradicted their later testimony in the criminal trial. Passmore and Watson intended to call the Reverend Jake Popejoy (Popejoy), who had been a member of the tribunal, to testify to that effect on Passmore's behalf.

¶5 On November 8, 2007, at Watson's request, the Park County Clerk of District Court issued a subpoena to Popejoy ordering him to testify at trial. At the time, Popejoy resided in Davenport, Iowa. Watson sent the subpoena and acknowledgment of service to Popejoy the same day via Federal Express. It appears that service was never accomplished.

2

¶6     Passmore's trial commenced on November 26, 2007. Passmore was present for the duration of the trial. Popejoy failed to appear and did not testify on Passmore's behalf. On December 4, 2007, a jury convicted Passmore of one count of sexual intercourse without consent and three counts of felony sexual assault. Passmore was released on his own recognizance until his sentencing hearing on April 4, 2008. He was sentenced to 35 years imprisonment with five years suspended for one count of sexual intercourse without consent, and 10 years imprisonment, with five years suspended, for each count of sexual assault. We affirmed his conviction in *State v. Passmore*, 2010 MT 34, 355 Mont. 187, 225 P.3d 1229.

¶7     On August 15, 2013, Passmore filed a pro se claim against Watson in the District Court of the Sixth Judicial District, alleging a variety of legal misdeeds amounting to "gross misconduct and malfeasance" and seeking an award of "the precise and exact sum of $2,437,501.29." In essence, Passmore claimed Watson failed to meet the appropriate standard of care for legal representation by failing to secure Popejoy's testimony at trial.

¶8     Watson moved for summary judgment, arguing that Passmore's claim missed the three year statute of limitations for legal malpractice. The District Court agreed with Watson and dismissed the lawsuit. Passmore now appeals.

**STANDARD OF REVIEW**

¶9     We review a district court's grant of summary judgment de novo, applying the same M. R. Civ. P. Rule 56 criteria as the district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839.

**DISCUSSION**

3

¶10    *Did the District Court err in granting Watson's motion for summary judgment?*

¶11    In his complaint, Passmore alleged that Watson committed multiple acts of legal malpractice, including "[making] a knowingly false statement to Passmore [and] intentionally misleading and deceiving Passmore concerning facts of Montana law." Passmore further alleged that Watson intentionally "withheld the subpoena for Rev. Popejoy, and never caused the subpoena to be served to Rev. Popejoy." The District Court construed these allegations to be a claim for legal malpractice and Passmore does not dispute the characterization.

¶12    Section 27-2-206, MCA, governs the time allotted for bringing a legal malpractice claim. The statute states that the action must be commenced "within 3 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the act, error, or omission." Section 27-2-206, MCA. A statutory limitation period begins to run when the cause of action accrues. Section 27-2-102(2), MCA. A cause accrues when all elements of the claim have occurred. Section 27-2-102(1)(a), MCA. Where an intervening cause is not at issue, the elements of a legal malpractice action are: 1) a duty of care from the attorney to the client, 2) a breach of that duty, 3) an injury to the client, and 4) an uninterrupted chain of events leading from the breach to the injury. *Labair v. Carey*, 2012 MT 312, ¶¶ 20-24, 367 Mont. 453, 291 P.3d 1160; *Busta v. Columbus Hosp.*, 273 Mont. 342, 371, 916 P.2d 122, 139 (1996).

¶13    Passmore argues that Watson breached his duty of care when he failed to subpoena Popejoy, and that the resulting injury was Passmore's incarceration.

4

¶14 The District Court found that at the time of Passmore's sentencing hearing on April 4, 2008, all potential elements of his claim had occurred and Passmore could have, through the use of reasonable diligence, discovered them. The court noted that by the completion of the trial Passmore knew that Popejoy had not testified. The court pointed out that the Clerk of Court's files in a criminal trial are public record and that the files in Passmore's trial were open for his inspection. Furthermore, Passmore could have requested his legal file from Watson at any point. Therefore, the court concluded that, at the latest, the statute of limitations on Passmore's claim began to run on April 4, 2008. Accordingly, Passmore had until April 4, 2011 to file his claim. Passmore filed his claim on August 15, 2013, more than two years after the expiration of the statute of limitations. The court dismissed his claim.

¶15 We agree with the District Court. Passmore was present for his entire trial and had full knowledge that Popejoy did not testify. After his sentencing hearing he had notice of his impending incarceration. The court records and Watson's files were available for Passmore to examine. Reasonable diligence could have led Passmore to discover acts, errors, or omissions supporting his claim of legal malpractice. Indeed, Passmore's claim relies in part on a copy of a subpoena he found while examining files related to his case. The manner of Passmore's discovery of the subpoena makes it clear that he had access to the pertinent documents. He could have examined those files and discovered those facts within the three year statute of limitations. He did not.

¶16 Passmore argues that the statute of limitations did not begin to run until August 25, 2011. According to Passmore, at some point during the criminal proceeding, Watson stated that a defendant could not subpoena an out-of-state witness. On August 25, 2011, Passmore,

while looking through the District Court file from his trial, discovered a subpoena for an out-of-state witness, requested and signed by Watson. Thus, by Passmore's reasoning it was on that date that he discovered the alleged breach and the statute of limitations began to run.

¶17 Passmore's argument is unavailing. A statute of limitations begins to run when all *facts* relevant to a claim are known or through reasonable diligence could be known. The rule does not apply to legal theories. *Town of Clyde Park v. Younkin*, 2004 MT 274, ¶ 11, 323 Mont. 197, 99 P.3d 196. Passmore's realization that Watson may have committed legal malpractice amounts to a discovery of a legal theory, not a fact. As noted above, Passmore had access to all relevant documentation and through reasonable diligence could have discovered facts on which to state his legal malpractice claim.

¶18 Additionally, Passmore disputes summary judgment because "the district court did not rule that the moving party, Watson, established the absence of a genuine issue of material fact." Passmore claims that Watson attempted to conceal his actions, "which is a presence of a genuine issue of material fact."

¶19 Again, Passmore's argument is unavailing. The District Court, in its Order Granting Summary Judgment, explicitly stated that "[t]he material facts concerning the information that was available to the Plaintiff are not subject to dispute." Furthermore, Passmore's "evidence" that Watson attempted to conceal his breach consists solely of a few speculative statements. On motion for summary judgment, once the moving party has established the absence of any genuine issues of material fact, "the burden shifts to the opposing party to prove, *by more than mere denial and speculation*, that a genuine issue does exist." *Spolar v. Datsopoulos*, 2003 MT 54, ¶ 11, 314 Mont. 364, 66 P.3d 284 (emphasis added). The District

Court found that Passmore did not meet this burden. We find nothing in the record to indicate that the District Court erred in concluding that no genuine issues of material fact existed.

¶20 The time for Passmore to file his legal malpractice claim began, at the latest, on April 4, 2008, and ran until April 4, 2011. Passmore did not file his claim until August 15, 2013. His claim was time barred by § 27-2-206, MCA. The District Court did not err in granting summary judgment to Watson.

¶21 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE