FILED

May 26 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0683

DA 14-0683

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 143

COREY HANSEN,

       Plaintiff and Appellant,

  v.

BOZEMAN POLICE DEPARTMENT,
and Does 1-15, inclusive,

       Defendants and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                 In and For the County of Gallatin, Cause No. DV-12-778A
                 Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Michael J. San Souci, San Souci Law Office, Bozeman, Montana

       For Appellees:

              Michael J. Lilly, Berg, Lilly & Tollefsen, P.C., Bozeman, Montana

                              Submitted on Briefs:  April 8, 2015
                                      Decided:  May 26, 2015

Filed:

                                                   _____
                                                       Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Corey Hansen appeals from the District Court's orders denying leave to file an amended complaint and granting summary judgment to the Bozeman Police Department. We affirm.

¶2 Hansen presents the following issues for review:

¶3 Issue One: Did the District Court err in denying Hansen's motion for leave to file an amended complaint?

¶4 Issue Two: Did the District Court properly grant summary judgment to the Bozeman Police Department?

## BACKGROUND

¶5 Corey Hansen is a veteran who suffers from service-connected physical conditions, including a seizure disorder. He has a service dog that alerts him to oncoming seizures. In 2011 Hansen and a few friends planned a visit to the C'Mon Inn, a hotel in Bozeman, Montana. Hansen had a reservation and had stayed at the hotel with his service dog in the past. He left copies of the certification papers for his service dog on file at the hotel. Those papers were still on file in September 2011 when Hansen arrived to check in, accompanied by his service dog wearing the appropriate identification vest.

¶6 The C'Mon Inn staff refused to allow Hansen to register at the hotel because he was accompanied by his service dog. The hotel's reason for excluding Hansen was that dogs are not allowed on the premises. This refusal persisted after Hansen explained that he had a disability that required the presence of the service dog; that the presence of the

2

service dog had been noted when the reservation was made; that he had stayed there in the past with his dog; and that the dog's papers were on file at the hotel. Eventually Hansen called 911 and complained that the hotel was violating his rights and discriminating against him by refusing him entry. A hotel employee also called 911 to ask that Hansen be removed from the premises.

¶7    Three Bozeman Police Department officers responded. They first interviewed Hansen and his friends, and then the C'Mon Inn manager. The manager claimed that Hansen had become "disorderly" when employees questioned him about his service dog and asked that Hansen be removed from the premises. The officers told Hansen that he would have to leave, but suggested other motels that would allow him to stay with his dog and obtained a C'Mon Inn business card so that Hansen could file a complaint if he wished.

¶8    Hansen filed a complaint against the hotel with the Montana Human Rights Bureau. After an investigation and an evidentiary hearing, the hearing examiner determined that the C'Mon Inn had discriminated against Hansen and had violated his rights under the Montana Human Rights Act. The hearing examiner awarded Hansen $15,000 in damages against the C'Mon Inn.

¶9    Hansen filed a separate Human Rights complaint against the Bozeman Police Department. The Human Rights Bureau investigated and concluded that the police did not discriminate against him. The Human Rights Commission upheld that conclusion

and issued a right to sue notice.[1] Hansen filed the present action against the Bozeman Police Department, contending that the responding officers themselves violated the Human Rights Act when they "aided, abetted and facilitated" the C'Mon Inn's discrimination against him.

¶10 Hansen appeals from the District Court's refusal to allow him to amend his complaint and from the subsequent order granting summary judgment to the Bozeman Police Department. We affirm.

## STANDARD OF REVIEW

¶11 This Court reviews a district court's decision on a motion under Rule 15, M. R. Civ. P. to file an amended pleading to determine whether there was an abuse of discretion. *Seamster v. Musselshell County Sheriff's Office*, 2014 MT 84, ¶ 6, 374 Mont. 358, 321 P.3d 829.

¶12 This Court reviews a district court's decision on a motion for summary judgment de novo, using the same criteria as the district court under Rule 56 M. R. Civ. P. *Passmore v. Watson*, 2014 MT 287, ¶ 9, 376 Mont. 529, 337 P.3d 84.

## DISCUSSION

¶13 *Issue One: Did the District Court err in denying Hansen's motion for leave to file an amended complaint?*

¶14 Hansen filed the complaint in this action on October 18, 2012, and moved for leave to file an amended complaint on June 3, 2014, proposing to include a new claim that the Bozeman Police Department negligently trained and supervised its officers. The

---

[1] We have not located copies of these documents in the record on appeal.

4

deadlines for the close of discovery and for amendment of pleadings had been set in a stipulated scheduling order and had already passed. Hansen contended that he did not learn of the facts to support the new claim until he deposed the responding officers the last day of the discovery period. Bozeman objected to the motion.

¶15 The District Court concluded that Hansen had unduly delayed both deposing the officers and filing the motion to amend. Further, Hansen's claims had been through two Human Rights proceedings, including investigations and a hearing. The District Court therefore concluded that Hansen's claim that he did not have information on a failure to train issue was "disingenuous." Additionally, while Hansen did not request a new pretrial scheduling order, the new claim would require additional discovery and designation of expert witnesses. The District Court determined that the motion for leave to amend was therefore untimely and prejudicial to Bozeman, and should be denied.

¶16 We find that the District Court thoroughly considered the positions of the parties and the context of the case to determine that leave to amend should not be granted. Determining whether to grant leave to amend is within the discretion of a district court, which acts arbitrarily if it acts without employing conscientious judgment, or exceeds the bounds of reason in view of all the circumstances. *Campbell v. Bozeman Investors*, 1998 MT 204, ¶ 34, 290 Mont. 374, 964 P.2d 41. Hansen has not demonstrated that the District Court abused its discretion, and the decision to deny leave to file the amended complaint is affirmed.

¶17   *Issue Two:   Did the District Court properly grant summary judgment to the Bozeman Police Department?*

¶18   Hansen's complaint alleged two claims for relief:  that the responding officers discriminated against him by violating § 49-2-302, MCA (part of the statues referred to as the Montana Human Rights Act), and by violating the Federal Americans With Disabilities Act.  The District Court granted summary judgment to Bozeman on both claims, concluding that neither Act required that the officers enforce Hansen's asserted rights against the C'Mon Inn.  The essential facts are not in dispute and therefore there is only an issue of law.

¶19   Montana law provides that it is an unlawful discriminatory practice for a public accommodation to refuse service to a person "because of a physical or mental disability." Section 49-2-304, MCA.  As noted, the Human Rights Bureau, in a separate proceeding and after hearing, determined that the C'mon Inn violated § 49-2-304, MCA, by refusing to provide a room to Hansen.  Hansen contends that the Bozeman police officers were required to materially assist him at the scene in his dispute with the hotel personnel.  At the hearing on summary judgment, Hansen's attorney argued that the officers responded to the situation with the wrong attitude, that they did not try to get the hotel to reconsider its position, and that they did an inadequate investigation.  He did not contend that the officers should have forced the hotel to give Hansen a room. The officers, he said, were required "to at least attempt to enforce his rights."

¶20   The District Court considered these arguments and the Human Rights statutes and was unable to find support for these contentions, concluding that officers responding to a

911 call are not required to force another to make a reasonable accommodation to a person with disabilities. Rather, Hansen's statutory remedy, which he utilized, was to pursue a claim under the Human Rights statues. Montana law, § 49-2-501 to -504, MCA, provides that the duty to enforce the Human Rights Act rests with the Montana Department of Labor and Industry (Department). Persons "aggrieved by any discriminatory practice" may file a complaint with the Department, § 49-2-501, MCA, which is the exclusive remedy to address unlawful discrimination in Montana. Section 49-2-512(1), MCA; *Edwards v. Cascade County Sheriff,* 2009 MT 451, ¶ 69, 354 Mont. 307, 223 P.3d 893.

¶21 When an aggrieved person files a complaint, the Department is required to investigate and attempt to informally settle the dispute. Section 49-2-504(1), (2), MCA. The Department must issue a finding based upon the facts of the case as to whether there is reasonable cause to believe that unlawful discrimination has occurred. Section 49-2-504(7), MCA; *Reeves v. Dairy Queen*, 1998 MT 13, ¶ 28, 287 Mont. 196, 953 P.2d 703. The Department may determine that the facts either support the claim or that they do not. Section 49-2-504(7)(b), (c), MCA. If there is reasonable cause to believe that there was discrimination, the matter is referred to a contested case hearing. Section 49-2-505, MCA. The hearing officer issues a decision and either party may appeal to the Human Rights Commission. Section 49-2-505(3) to (5), MCA. The Human Rights Division hearings officer may provide appropriate relief to the aggrieved party, § 49-2-506, MCA, which may be enforced by petition to district court, § 49-2-508, MCA.

¶22    The express allegation in Hansen's complaint was that Bozeman itself violated the Human Rights Act when it "aided and abetted" the C'Mon Inn's discriminatory conduct. Hansen's claim is based upon § 49-2-302, MCA:

> It is unlawful for a person, educational institution, financial institution, or governmental entity or agency to aid, abet, incite, compel or coerce the doing of an act forbidden under this chapter or to attempt to do so.

The Montana Human Rights Act does not contain a definition of the terms "aid, abet, incite, compel or coerce" as used in § 49-2-302, MCA. The District Court and the parties relied upon the Restatement of Torts for a definition of "aiding and abetting":

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Restatement (Second) of Torts*, § 876. Assuming that this definition applies, Bozeman does not qualify as an aider or abettor of C'Mon Inn's discrimination. Most obviously, the hotel had already discriminated against Hansen by refusing to register him before the officers arrived. There is nothing but speculation to support a contention that the C'Mon Inn staff would have reversed its decision if only the officers had done or said something different. And, it is notable that the C'Mon Inn organization continued its resistance to Hansen's claim through the investigation and the evidentiary hearing that resulted in an adverse decision.

8

¶23 There is also no material support for the contention that the responding Bozeman officers committed a discriminatory act "in concert with" or as part of a "common design" with the hotel, or that the officers gave "substantial assistance or encouragement" to the hotel to discriminate against Hansen. While Hansen sees assistance and encouragement in the officers' ultimate request that he leave the hotel and seek a room elsewhere, there is no showing that this was anything more than their good faith effort to diffuse the impasse between Hansen and the hotel staff. Last, the officers did not discriminate against Hansen through their own separate conduct. Therefore, we find no evidence to support a contention that they aided or abetted C'Mon Inn's conduct.

¶24 We agree with the District Court's conclusion that the Human Rights Act on its face does not make law enforcement officers responsible for remedying unlawful discrimination following the aggrieved party's call to 911. To the contrary, the law sets out clear procedures and remedies to address and correct discrimination. While § 49-2-601, MCA, makes engaging in willful discrimination a misdemeanor, nothing in that section evidences an intent to allow or require law enforcement officers to supplant the statutes providing for enforcement of protections against discrimination in Montana. Hansen is unable to concretely describe the parameters of a law enforcement officer's responsibility in a situation like the one in this case. *See McDonald v. DEQ*, 2009 MT 209, 351 Mont. 243, 214 P.3d 749 (determining the parameters required for employer's accommodation of employee's service dog).

¶25 Hansen sued under the Human Rights Act, and we find no basis therein to require law enforcement officers to investigate and determine the merits of discrimination

9

disputes. Determination of whether there has been unlawful discrimination can involve intricate issues of law and proof. *Reeves*, ¶¶ 10-18, 21; *BNSF v. Feit*, 2012 MT 147, ¶ 8, 365 Mont. 359, 281 P.3d 225. These are not the kinds of situations that are suited to resolution by officers responding to a 911 call. These are, however, the kinds of situations commonly considered and disposed of under the investigation, hearing and enforcement provisions in Montana law.

¶26 We reach a similar conclusion under the Federal Americans with Disabilities Act. Under the ADA, 42 USCA § 12132, "no qualified individual with a disability" may be "excluded from participation or be denied the benefits of the services, programs or activities of a public entity, or be subject to discrimination by any such entity." Like the Montana Human Rights Act, the ADA does not contain any express requirement that the officers enforce or vindicate whatever rights Hansen had against the hotel.

¶27 The parties agree that Bozeman is subject to the requirements of that statute. *Sheehan v. San Francisco*, 743 F.3d 1211 (9th Cir. 2014). This certainly prohibits Bozeman from itself unlawfully discriminating against citizens, but it does not also carry an obligation to enforce citizens' rights as against third parties.[2] The District court concluded as follows:

> There's no dispute that police officers are subject to the ADA and that Mr. Hansen was qualified to participate or receive the benefit of the Bozeman Police Department services. But the Court does not find that, first of all, there are sufficient allegations either in the Complaint or as even supplemented through the briefing that he was denied the benefit of the

[2] Law enforcement agencies are subject to non-discriminatory requirements of Montana law. Section 49-2-308, MCA; *Edwards*, ¶ 62.

10

Police Department services or that he was specifically discriminated against by the Bozeman Police Department by reason of his disability.

We agree with the District Court's assessment of the ADA claim.

¶28 There is no evidence that Bozeman denied any services to Hansen, aside from his contention that the officers were required to do something more than they did to assist him in his dispute with the C'Mon Inn. The officers responded promptly to Hansen's 911 call; they assessed the situation, interviewing Hansen first; and they tried to assist Hansen to find some other place to stay. While the officers did not do what Hansen says they should have done, they did not discriminate against Hansen because of his disability. They had no obligation to force the C'Mon Inn to provide him a room or to negotiate on his behalf.

¶29 The District Court properly exercised its discretion in denying Hansen's motion for leave to file an amended complaint and properly granted summary judgment to the Bozeman Police Department.

¶30 The District Court is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT

11