JOSEPH F. JONES *vs.* CHARLOTTE M. STEVENS.

Norfolk. April 6, 1931. — July 3, 1931.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Way*, Private: creation, extent, abandonment. *Easement. Deed,* Construction. *Land Court,* Findings by judge, Appeal. *Probate Court,* License to executor to sell real estate. *Executor and Administrator. Partition. Estoppel.*

At the time of the death of the owner of a tract of land containing three lots, of which one was separated from the other two by a pond belonging to a third person, a farm road ran from a public way at the northeast corner of the first lot across that lot southerly to a point four hundred or more feet west of the second lot and then continued southeasterly over the third lot. The road between the first and third lots generally was under the waters of the pond. While the road did not touch the second lot, it ran near to it. Upon the owner's death, his executor was licensed by the Probate Court to sell enough of the tract to "produce" a certain sum; and he thereupon sold the second lot by a deed containing the words, "with a right of way from . . . [the public way] passing the dwelling house of said deceased . . . [which was located on the first lot] thence over the usual traveled road leading to the land hereby conveyed." Upon a petition in the Land Court by a successor to the title of the first lot to register title thereto, the successor in title to the second lot claimed a right of way over the first lot. The trial judge, after taking a view and hearing evidence, found that the farm road was the road referred to in the deed; and ordered the petitioner's title registered subject to such right of way. *Held,* that

(1) The finding by the judge as to the identity of the farm road with that mentioned in the deed must stand;

(2) The words in the deed, "with a right of way from the . . . [public way] passing the dwelling house of said deceased," did not refer to the public way but were descriptive of the direction in which the way granted ran;

(3) The grant of the right of way was not in excess of the powers of the executor under the license from the Probate Court;

(4) The right of way to the second lot was not affected by subsequent proceedings in partition of a portion of the land of the decedent among his heirs, in which proceedings no mention was made of the right of way as appurtenant to the second lot; and the respondent in the Land Court, owner of that lot, was not estopped to claim the right of way by an assent to the partition proceedings by the then owner of his lot;

(5) Abandonment of the right of way was not shown by mere nonuser thereof;

(6) The right of way could be appurtenant to the second lot although that lot was not contiguous to the first lot, the servient tenement, and although it did not appear what rights, if any, the respondent had in the intervening land;

(7) No sufficient reason appeared for construing the grant of the right of way as an easement in gross, terminable upon the death of the grantee, rather than an easement appurtenant to the second lot;

(8) The respondent's rights in the land or water between the first and second lots were not in question;

(9) The decision of the judge of the Land Court was right.

Where a party to a petition in the Land Court for registration of the title to land both appealed from a decision by the judge and filed a bill of exceptions which was allowed and which presented all questions raised, this court considered the exceptions only and ordered the appeal dismissed.

PETITION, filed in the Land Court by Katherine Macdonald on January 14, 1930, for registration of the title to land in Canton.

Subsequently Joseph F. Jones, grantee of Macdonald, was substituted as petitioner. The case was heard by *Corbett*, J. Material findings are stated in the opinion. The judge ordered the petitioner's title registered subject to a right of way in the respondent. The petitioner appealed and also alleged exceptions.

*W. I. Morse*, for the petitioner.

*M. T. Hall*, (*K. D. Johnson* with him,) for the respondent.

SANDERSON, J. This is a petition to register title to a tract of land, hereinafter called the locus, situated about two hundred feet west of a public way, known as Turnpike Street, in Canton. The respondent is the owner of three

parcels of land shown as A, B and C on a plan filed with a pending petition brought by her to register the same. She claims as appurtenant to lot C a right of way over the locus. Lot C is separated from the locus by a strip of flowed land owned by the Plymouth Rubber Company. The locus, as well as parcels A, B and C and other land, is a part of a ninety-six acre farm which was owned by Paul Wentworth in 1798. The judge of the Land Court found that through this farm there was a road extending from the northeast portion thereof from what is now known as Turnpike Street southerly over the locus to a point four hundred or more feet west of lot C, and then continuing southeasterly over lot B to Turnpike Street, and that the westerly side of lot C is about one hundred thirty feet from the southeasterly corner of the locus. A brook ran through the farm in a somewhat westerly direction from Turnpike Street and crossed another highway at which a dam was constructed causing portions of the farm and other lands, as well as parts of the road, to be flowed. The road between the locus and lot B is generally under water, thus separating by a strip of water the locus from parcels B and C. The parts of the farm flowed were conveyed in 1836 by Samuel Tucker, who owned about seventy acres of the Wentworth farm, to the Neponset Company, a predecessor in title of the Plymouth Rubber Company. After this sale Tucker still owned the locus, lot C, and other lands of which A and B are parts. Shortly after the execution of this deed Samuel Tucker died, and on September 5, 1838, his executor, Elias Tucker, sold lot B. On March 16, 1839, the same executor conveyed lot C to Aaron E. Tucker at public auction, under a license of the Probate Court. This lot was conveyed "with a right of way from the Stoughton Turnpike road passing the dwelling house of said deceased (Samuel Tucker) thence over the usual traveled road leading to the land hereby conveyed." The respondent's contention is that this right of way is appurtenant to lot C and that it extends over the petitioner's land substantially as shown on the blueprint.

The judge of the Land Court, who took a view of the premises, found that there is a well defined way over the

locus; that it passes the house of Samuel Tucker, which is still standing, and extends to the pond; that across the pond it continues over lot B to Turnpike Street and is well defined over this lot; and that while there are marks of travel leading toward parcel C from a point on Turnpike Street north of parcel B, he was unable to find that they extended to parcel C. He found that considering the Tucker deed in the light of all the evidence and the view, the way as located on the blueprint is the one referred to in the deed; that while it did not touch the land of the respondent it passed nearby and was evidently the road used in connection with all parts of the farm; and that as this was an express grant of a right of way, no way by necessity could be implied from the deed which contains that grant. He stated that, generally speaking, an appurtenant right of way is indispensable for the reasonable enjoyment of land and that in this case without granting the purchaser a way to reach the land from a public highway no sale could probably have been made. He found that the fact, that the land now owned by the Plymouth Rubber Company, separating the locus from lot C, is usually flowed by the waters of the pond, did not invalidate the grant of a right of way appurtenant to parcel C over the locus. He stated that while there was some evidence of recent user of the way by the respondent, there was no evidence as to what use, if any, was made of it from the time of its creation, and, however that might be, nonuser, without more, did not defeat the easement by grant; that no evidence of abandonment was introduced. He found that the locus is subject to the right of way set forth in the executor's deed and that it is located substantially as shown on the blueprint. He made no ruling or finding whether the respondent has or has not, as appurtenant to lot C, a right of way by either express or implied grant over the land or water which lies between that land and the premises sought to be registered, stating that that question was not open in this case.

The petitioner contends that the way granted in the deed of Elias Tucker to Aaron Tucker was not the way extending through the locus but was another way. The evidence

is not reported and we are bound by the findings of fact made by the judge of the Land Court. *Marvel* v. *Cobb*, 204 Mass. 117, 118. *Mitchell* v. *Cobb*, 220 Mass. 60. *Bessey* v. *Ollman*, 242 Mass. 89, 91. *Bucella* v. *Agrippino*, 257 Mass. 483, 486. *Erickson* v. *Ames*, 264 Mass. 436, 441. He was able to observe at the view the nature of the locality, and could properly infer that the road shown on the petitioner's blueprint was generally used for all purposes connected with the farm. The way described in the deed to Aaron Tucker was descriptive of the road extending through the locus. The language of the deed is not applicable to a way which does not pass "the dwelling house of said deceased. . . ." The contention of the petitioner, that the words "with a right of way from the Stoughton Turnpike road passing the dwelling house of said deceased" refer to the turnpike itself, cannot be sustained. The words "thence over the usual traveled road" indicate that the words immediately preceding are descriptive of the direction in which the way granted ran. Moreover, the turnpike road did not pass the dwelling house of Samuel Tucker. The finding and ruling of the judge, that the way granted is the road extending across the locus, cannot be said to be erroneous.

It is contended by the petitioner that the grant of a right of way by the executor of Samuel Tucker was in excess of his powers. The license was in general terms "to sell and convey so much of the real estate of the said deceased as will produce said sum ($79.38) with incidental charges." The sale as made under the license was valid, Rev. Sts. c. 71, *Yeomans* v. *Brown*, 8 Met. 51, 58, *Norton* v. *Norton*, 5 Cush. 524, and the conveyance of lot C with a right of way was not broader than the powers conferred by the license. In *Baker* v. *Willard*, 171 Mass. 220, the license empowered the executor to sell only a specific parcel of real estate.

In 1863 the land now owned by the petitioner was partitioned by order of the Probate Court among the heirs of Samuel Tucker. The owner of lot C assented to the return of the commissioners. No mention of the right of way appurtenant to lot C was made in the petition or in the return

filed by the commissioners. The petitioner contends that the respondent, whose predecessor in title assented to the partition proceedings, is now estopped from asserting her claim to an easement. This contention cannot be sustained. The right of way if appurtenant to lot C was not affected by the partition proceedings (*Weston* v. *Foster,* 7 Met. 297, 299), nor by the assent thereto of the owner of lot C. *Crocker* v. *Cotting,* 170 Mass. 68, 71. See *Bornstein* v. *Doherty,* 204 Mass. 280, 283.

No evidence of abandonment was introduced. Mere non-user of a way created by grant would not constitute abandonment. *Willets* v. *Langhaar,* 212 Mass. 573, 575. *Dubinsky* v. *Cama,* 261 Mass. 47, 57.

The petitioner contends that if the way granted by the executor of Samuel Tucker was the road passing through the locus then the easement was in gross and was not appurtenant to lot C; that the easement being in gross was not assignable and was terminated by the death of the grantee. The only apparent purpose of the grant of a way was to furnish access to and egress from lot C in so far as the grantor was able to accomplish this result. *George* v. *Cox,* 114 Mass. 382, 387. If lot C were contiguous to the locus the easement would clearly be appurtenant. *Mendell* v. *Delano,* 7 Met. 176. *Dennis* v. *Wilson,* 107 Mass. 591. *Handy* v. *Foley,* 121 Mass. 258. *Brooks* v. *West Boston Gas Co.* 260 Mass. 407, 409. "An easement is not presumed to be personal unless it cannot be construed fairly as appurtenant to some estate." *Willets* v. *Langhaar,* 212 Mass. 573, 575. No sufficient reason appears for construing the grant of the right of way as an easement in gross.

There seems to be some conflict of authority on the question whether an easement appurtenant to a dominant estate can exist over an estate not adjacent thereto. In this Commonwealth it has been held that a way by necessity may exist over a lot not contiguous to the dominant estate in a case where the owner of the dominant estate had a right of way by prescription over the intervening land. *Leonard* v. *Leonard,* 2 Allen, 543, 545. The somewhat ambiguous statement in *Dennis* v. *Wilson,* 107 Mass. 591, 593, does not

weaken the force of *Leonard* v. *Leonard,* and upon their facts the cases are not inconsistent with each other. It has been held in the case of an easement in gross that it is not essential to the validity of the easement that the grantee at the time of the grant should have a legal interest in intervening lands so as to be able to reach the servient tenement. *Goodrich* v. *Burbank,* 12 Allen, 459. *Owen* v. *Field,* 102 Mass. 90. The reasons supporting this conclusion would seem to indicate that the same rule should be adopted in the case of easements appurtenant.

In *Goodrich* v. *Burbank,* 12 Allen, 459, the court, quoting from *Lonsdale Co.* v. *Moies,* 21 L. R. 658, 664, said at pages 461–462: "If I have a spring, I may sell the right to take water from it by pipes, to one who does not own the land across which the pipes are to be carried, and I may either restrict the use to a particular house, or not, as I please. It is true the grantee cannot make the grant useful without acquiring from the owner of the intermediate land the right to lay pipes therein, nor can he use the water in a house until he obtains the right to possess that house. But these may be acquired afterwards. Incorporeal rights may be inseparably annexed to a particular messuage or tract of land, by the grant which creates them, and makes them incapable of separate existence. But they may also be granted in gross, and afterwards, for purposes of enjoyment, be annexed to a messuage or land, and again severed therefrom by a conveyance of the messuage or land, without the right, or a conveyance of the right without the land." *Mahon* v. *Tully,* 245 Mass. 571, 576. It has been held in many jurisdictions that an easement may be appurtenant to land although the servient tenement is separated by other lands from the dominant tenement. *Riefler & Sons* v. *Wayne Storage Water Power Co.* 232 Penn. St. 282. *Anania* v. *Serenta,* 275 Penn. St. 474. *Cady* v. *Springfield Water Works Co.* 134 N. Y. 118. *Thomas* v. *Brooks,* 188 Ky. 253. The cases of *Phoenix National Bank* v. *United States Security Trust Co.* 100 Conn. 622, and *Bruns* v. *Willems,* 142 Minn. 473, adopting the same rule, present situations resembling in many respects those in the case at bar.

In *Graham* v. *Walker*, 78 Conn. 130, the court held that a way by prescription may be appurtenant to particular land although the dominant and servient tenements are a substantial distance apart and the way is accessible only by a highway upon which both closes abut. The court, after referring to the fact that a right to convey water from a distant source of supply may be appurtenant to a tenement separated from that in which the supply exists by several intervening parcels belonging to different proprietors, said at page 135: "In like manner, a way from one close to and through another is none the less appurtenant to the former if it run over the intervening lands of numerous proprietors . . . . That a way cannot be appurtenant to a close at which it neither begins nor ends has been often asserted by text writers, and is not without countenance from judicial decision . . . . The better reason seems to us to lead to a contrary conclusion and to be supported by the rules of common law. An appurtenant way ordinarily does touch the close to and from which it leads, and that it should is commonly essential to its enjoyment; but it is not always thus essential, and when not, the dominant may be separated even at a long distance from the servient tenement."

From the trend of our own decisions and what seems to be the prevailing view in other jurisdictions we think the better rule is that a right of way may be appurtenant to land even though the servient tenement is not adjacent to the dominant, and even though it does not appear what the grantee's rights over the intervening land, if any, may be. A grantor who has included in his grant a right of way over his remaining land to enable the grantee to pass over a part of the distance from a highway to the parcel granted ought not to be permitted to say that the grant of the easement was invalid or not appurtenant merely because the grantee or his successor has not shown whether or not he has acquired a legal right of way over the land intervening between that sold to the grantee and that retained by the grantor.

The trial judge was right in making no ruling or finding as to whether the respondent has or has not as appurtenant to lot C a right of way by either express or implied grant

over the land or water which lies between that lot and premises sought to be registered. That question was not open on this record.

No error appears in the rulings or refusals to rule to which exceptions were saved.

The petitioner filed both an appeal from the decision and a bill of exceptions which was allowed by the trial judge; since all questions raised are presented by the exceptions, that has been considered and the appeal is to be dismissed.

*Exceptions overruled.*
*Appeal dismissed.*