[Civ. No. 9710.    Third Dist.    Oct. 19, 1960.]

ZEREDA JENSEN, as Executrix, etc., et al., Respondents,
v. HAROLD E. RITTER et al., Appellants.

Carr & Kennedy and Jaffa & Sumski for Appellants.

Daniel S. Carlton and Harold S. Hansen for Respondents.

PEEK, J.—The present controversy is between neighboring landholders in Shasta County. Plaintiff Zereda and Walter Jensen (the latter died before trial and his estate is represented by Zereda as executrix) brought suit to quiet title to an easement of right of way they claimed over a road and bridge located on the Ritters' land, to prevent the obstruction thereof, and for damages for alleged past obstruction. Plaintiffs also sought to restrain defendants from trespassing on their land to reach "Big Spring," the source of a common water supply, and asked for damages for such past trespasses.

Defendants answered and by their cross-complaint sought to quiet title to their interest in the mutual water system and to obtain a declaratory judgment determining the rights and duties of the parties thereto; to prevent the plaintiffs from the alleged excessive diversion of water from the source of said mutual system; to establish the defendants' alleged easement of way across the plaintiffs' property for the purpose of obtaining access to part of the water system; to prevent the plaintiffs from crossing the defendants' property by means of the road and bridge; to prevent the plaintiffs from flooding the defendants' land with alleged waste irrigation; and to recover damages for such past acts.

The trial court, sitting without a jury, found that plaintiffs were the owners of an easement consisting of a right of way approximately ten feet in width over defendants' abutting property and that such easement was for the plaintiffs' use in passing over the defendants' property with vehicles, horses, and by pedestrian use and other reasonable means, for hauling hay, and for ingress and egress to and from the plaintiffs' real property. This easement was found to commence at the entrance of the Ritter property at County Road No. C-17, to follow the existing road through the defendants' land past their dwelling house, over the bridge across Fall River, and across defendants' remaining property until the northern boundary was reached. The court further found that the defendants had no interest in the right of way referred to and that each party's claim for damages was offset by the claim of the other.

The court also found that there was situated on plaintiffs' property a spring known as "Big Spring," a dam and a

pumping plant, the latter consisting of a water wheel, an 8-inch centrifugal pump, certain necessary fluming, and a conduit used to pump water from the spring; that the parties equally owned the pumping plant and the equipment used in connection therewith, which was found to be in immediate need of certain enumerated repairs; and that the parties were equally responsible for the maintenance, care and upkeep of the pumping equipment. The plaintiffs were found to own and to be obligated to maintain the dam, which was likewise found to require certain repairs, the cost to be borne by plaintiffs. The spring was found to be owned by the plaintiffs, except that the parties were equally entitled to the water produced by the pumping plant, which was installed in 1922. The defendants were limited to an equal share of the amount of water that was originally produced by the pumping system, the court finding this to be not in excess of 850 gallons per minute. The water was to be used for irrigation purposes on the property of the parties.

Judgment was entered accordingly and defendants moved for a new trial. In denying the defendants' motion the court amended its findings of fact. It found that the defendants should have a pedestrian easement of way to pass over the plaintiffs' property adjacent to the river for the purpose of daily inspection and minor repairs to the pumping system, and that such easement was to be used in a reasonable manner so as not to interfere with or damage the crops or land of the plaintiffs, or to utilize an area greater than that actually necessary for the aforementioned purposes. This easement was found to be an incident of defendants' ownership of the pumping system and their right and obligation of maintenance, inspection, and repair. It included the right to pass over the bridge across Fall River to gain access to the pumping system.

In its amended findings, the court also found that the defendants did not own an easement of way across the plaintiffs' property for the purpose of hauling materials to the pumping system for repair and maintenance purposes. Such materials were to be hauled over the right of way owned by the plaintiffs and then over the road existing from the right of way to the pumping system. In the event that it became impossible for the defendants to haul materials in that manner, the plaintiffs were to permit the defendants to cross their fields for such purposes in a reasonable place and in a reasonable manner. This right of the defendants was not to exist except in the event of necessity. The court found that the reasonable and

practical route of access to the pumping plant and spring was over the right of way owned by the plaintiffs and then by the road to the pumping system.

Finally, the court found that the plaintiffs had not diverted or taken away any water, to which the defendants were entitled, from the pumping system and that the parties should each receive an equal amount for equal periods of time for their respective uses.

Although the defendants do not contest the findings of the court that neither they nor the plaintiffs were entitled to damages, they do take issue with substantially all of the other findings. In the interest of convenience and clarity we will deal with the numerous contentions set forth in their extensive brief under four general categories: (1) the mutual water system; (2) the easement granted the plaintiffs over the defendants' land; (3) the failure of the trial court to find on a material issue; and (4) the trial court's abuse of discretion in denying their motion for a new trial.

[■■] As to that portion of the judgment dealing with the mutual water system, it is contended that it does not adequately protect defendants' admitted right to an equal share of the water produced by said system. This portion of their appeal is essentially an attack on the lack of particularity in the trial court's findings. Illustrative of defendants' contention in this regard is their argument that the findings should have included an order to replace the turbine and the structure enclosing it, whereas the court found that the pumping system was in immediate need of repair, including necessary repair to the turbine and the structure enclosing it. Each finding is attacked in substantially the same manner. To discuss in detail the numerous contentions so made would serve no useful purpose and would accomplish nothing other than to add another lengthy chapter to a controversy which already is far too prolonged. It is sufficient to note that after a thorough examination of the voluminous record, we conclude that defendants' arguments in this regard are without merit and that the findings and judgment made by the trial court are sufficiently specific to adequately protect defendants' rights to their share of the water produced by the mutually owned system.

■■ Defendants next contend that the evidence does not support the conclusion of the trial court that plaintiffs obtained ownership of the easement by adverse use or prescription. Such contention wholly disregards the evidence in sup-

port thereof. It is true that the record contains evidence favorable to defendants, but that is not to say that the record is devoid of any substantial evidence favorable to plaintiffs and sufficient to support the findings now attacked. The witness Brown, defendants' immediate predecessor in title, testified that for the period of his ownership, approximately 10 years prior to his sale to defendants, the Jensens used the roadway for pedestrian travel and by vehicle in the course of their farming operations for hauling materials to the pump; that the Jensens did not ask his consent to use the road; and that he did not consider he had the right to stop them. Additionally, Mrs. Jensen testified that her acquaintance with the property dated back to her childhood and throughout that period of time they had used the road openly and without protest from Brown, and that on different occasions her husband had helped to repair the bridge. It necessarily follows that the judgment in this regard is sufficiently supported by the evidence and hence, defendants' contention is without merit.

Defendants' next contention, and one which was strongly urged at oral argument, is that such an easement was legally impossible since neither terminus was on the land of plaintiffs, to which the court found the easement to be appurtenant. Admittedly, the easement begins and ends on defendants' land and between it and plaintiffs' property is situated so-called "Indian land," i.e., land which is held in trust by the United States for certain named Indians.

Neither party has cited a case from this jurisdiction, nor have we found one where such question was squarely in issue or discussed. Tiffany on Real Property, 3d edition, section 702, page 214, notes that statements may "be found, and a few decisions," which support defendants' contention, but: "Why one terminus of a way must be upon the dominant tenement, is not explained." The writer also states: "There is no necessity that the dominant tenement, to which the easement is appurtenant, should adjoin the servient tenement, which is subject to easement, though obviously the two tenements ordinarily do adjoin." In the case of *Jones* v. *Stevens,* 276 Mass. 318 [177 N.E. 91, 76 A.L.R. 591], the Supreme Court of Massachusetts affirmed a finding of the trial court that there was appurtenant to plaintiff's lot a right of way over certain property separated from plaintiff's property by intervening land. As in the present case, the Massachusetts court had made no ruling or finding as to whether plaintiff had or had not a right of way over such intervening land.

In affirming the judgment the Supreme Court of that State held: "From the trend of our own decisions and what seems to be the prevailing view in other jurisdictions we think the better rule is that a right of way may be appurtenant to land even though the servient tenement is not adjacent to the dominant, and even though it does not appear what the grantee's rights over the intervening land, if any, may be." The American Law Reports annotation following the Jones case states that the rule established in that case ". . . is supported by the weight of authority." (76 A.L.R. 596; see also *Browder* v. *Graham,* 204 Miss. 773 [38 So.2d 188], where the court was confronted with a situation substantially the same as presented in the instant case and applied the rule above enunciated.) Neither can this court see any valid reason why the two tenements should adjoin. We therefore conclude that the majority rule as noted in the authorities above cited should be the rule in this state.

Defendants' final contention under this category is that since an individual may not obtain a right of way over land owned by the United States by adverse use or prescription, the judgment in this case, which purportedly gave plaintiff such right, cannot be sustained. The obvious fallacy in defendants' argument lies in the fact that the court did not make such an order. As previously noted, the judgment only granted to plaintiffs the right to cross defendants' land. The fact that the United States could at any time prevent plaintiffs' use of the intervening "Indian land" in no way could affect the validity of the judgment granting plaintiffs a right of way over defendants' land.

Although stated in various ways, the essence of defendants' next contention is that the trial court erred in failing to expressly find upon the issues as to whether or not defendants were bona fide purchasers without notice of plaintiffs' right of way. The rule is well established that ". . . while full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made. (See 24 Cal.Jur., § 207, p. 974, and cases cited.) And, of course, as to the sufficiency of evidence to support findings, it is the time honored rule that all substantial conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the findings if

480

possible. [Citing cases.]'' (*Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593].) ██ Here the court, by its judgment, granted an easement to plaintiffs. It is patent that it could not do so without impliedly finding that the defendants did purchase with notice.

The defendants, however, argue not only that the record contains no evidence to support a finding that they had either actual or constructive notice, but to the contrary, that the evidence compels a finding that they acquired their property without notice. Again, defendants fail to consider the testimony given in support of the conclusion of the trial court and rely on only that which is favorable to them. The record shows that at the outset of the trial, the court viewed the premises and any information gained by it constituted evidence which the court might consider in arriving at its conclusion. Mrs. Jensen, although contradicting herself, did testify in detail concerning a conversation between the defendants, her husband and herself, which occurred prior to defendants' purchase of the ranch, during which the right of way was discussed. Additionally, there was testimony by the witness Brown that he had discussed the road with the defendants during the negotiations leading up to his sale to them, but he did not recall if the Jensens were specifically mentioned. And lastly, there was the further testimony of several witnesses relative to the visibility of various physical aspects of the road and its usage over a long period of time. Such evidence was more than ample to support the finding necessarily implied from the express findings of the court that the defendants had at least constructive, if not actual, notice at the time they purchased their property. (*Richter* v. *Walker, supra.*)

██ Defendants' final contention is that the court abused its discretion in denying their motion for a new trial. The first portion of their motion was predicated on the ground of newly discovered evidence. In support they relied upon affidavits by Lon Brown, his wife, and his father. The affidavit of Lon Brown was in contradiction to the direct testimony which he gave at the trial concerning his knowledge of plaintiffs' claim of right to use the easement in question. The affidavits of his wife and father stated in effect that they had no knowledge of any claim of right by plaintiffs to use the roadway over defendants' land. It would seem that the affidavit of Lon Brown would be of little consequence in view of the fact that it would add nothing other than further conflict in the evi-

dence by way of impeachment of his own testimony. The same would likewise be true of the matters set forth in the affidavits of his wife and father. Furthermore, in regard to them, the claim of surprise by defendants' counsel is not substantial, since the issue upon which he now predicates his allegation was, by his own words, directly in issue at the trial. In any event, we cannot see how the facts set forth in the affidavits of such parties would necessarily have changed the result and hence, we cannot say that the court abused its discretion in denying defendants' motion upon this ground. (*MacKenzie* v. *Angle,* 82 Cal.App.2d 254, 261 [186 P.2d 30].)

The remaining portion of defendants' motion was based upon what they contend were procedural irregularities occurring during the course of the trial. While it is true that the trial of the case was subject to several postponements and delays, it is also true that such postponements not only were compelled by prior assignments of Judge Paulsen by the Judicial Council, which were known by all counsel from the outset, but also were occasioned by reason of the conflicting calendars of counsel. When the judge was assigned to try the case it was apparently upon the assumption that the case would be completed within two days. Early in the proceedings, when it became apparent that the case could not be completed as quickly as counsel had stated, the court offered to grant a mistrial in order that another judge could be assigned, thereby assuring a continuous hearing until disposition of the case. Defendants did not take advantage of this offer, nor does it appear that they took any affirmative action to prevent the delays and postponements of which they now complain. It also should be noted that the case was concluded shortly before Judge Paulsen retired, again a fact known from the outset by all parties. At the time he made and entered his original findings, counsel were informed that he had not had time to consider the objections to the findings of fact and conclusions of law submitted by the defendants, but that following his retirement he would accept a further assignment by the Judicial Council in order that he might consider the same. Thereafter, at the time defendants' motion for a new trial was heard, Judge Paulsen did consider defendants' objections to his original findings of fact and conclusions of law and subsequently they, as well as the judgment, were modified. Under such circumstances we find no basis for defendants' present complaint that their objections were not properly considered.

Since a motion for a new trial is, to a large extent, addressed

to the sound discretion of the court, and since its action will not be disturbed on appeal in the absence of a clear and affirmative showing of a manifest abuse of that discretion, and since we cannot say that defendants have shown such an abuse in the present case, the denial of their motion for a new trial must be affirmed.

The judgment and order are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied November 18, 1960, and appellants' petition for a hearing by the Supreme Court was denied December 14, 1960.