FILED

January 27 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0136

DA 14-0136

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 21

CODY MEINE, ROBERT MEINE, DOROTHY MEINE,
JERRY MEINE, TAMARA MEINE, RICHARD MEINE,
LINDA MEINE, BOBBIE MUSSARD, RICHARD
BLAKE AND ROBERT BLAKE,

      Plaintiffs and Appellees,

    v.

HREN RANCHES, INC., a Montana
corporation, JEFF NELSON, RENEE
KLAKKEN, MIKE KLAKKEN, CHERYL
HREN, JOHN HREN, BEVERLY HREN
and JOHN DOES 1-5,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Fifth Judicial District,
                    In and For the County of Beaverhead, Cause No. DV-10-13454
                    Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Harley R. Harris, Morrison, Sherwood, Wilson & Deola, PLLP,
            Helena, Montana

      For Appellees:

            David L. Vicevich, Dolphy O. Pohlman, Attorneys at Law, Butte,
            Montana

                            Submitted on Briefs:  August 6, 2014
                                    Decided:  January 27, 2015

Filed:

_____
                     Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Plaintiffs/Appellees (collectively, the Meines) commenced this action in the Fifth Judicial District Court, Beaverhead County, against Defendants/Appellants (collectively, the Hrens) seeking a determination that they hold a prescriptive easement over the Hrens' land and a permanent injunction prohibiting the Hrens from blocking or impeding the use of this easement. Following a bench trial, the District Court entered judgment in favor of the Meines. The Hrens now appeal. We affirm.

¶2 The Hrens raise four issues, which we restate as follows:

1. *May a prescriptive easement arise in favor of a dominant estate that is not contiguous with the servient estate?*

2. *Is the creation of a prescriptive easement contingent on a finding that the dominant landowner's activities on the dominant estate are not illegal?*

3. *Does the evidence support the District Court's finding of a prescriptive easement in this case?*

4. *Did the District Court err in determining the nature and the scope of the prescriptive easement over the Hrens' property?*

## BACKGROUND

¶3 Small Horn Canyon is a steep narrow canyon, with an elevation of approximately 6,000 feet, about ten miles south of Dillon and ten miles east of Clark Canyon Reservoir. The plaintiffs in this case represent three generations of the Meine family.[1] The

---

[1] The eldest generation is Robert and Dorothy Meine. The next generation consists of Robert and Dorothy's children: Jerry Meine and his wife Tamara; Richard Meine and his wife Linda; and Bobbie Mussard. The youngest generation includes Cody Meine (Jerry's son), and Richard and Robert Blake (Bobbie's sons).

defendants are Hren Ranches, a small corporation operated by family members.[2] The Hrens have owned their property for nearly thirty years and purchased the property from Glenn Crampton, whose family was the original homesteaders.

¶4 Land in Small Horn Canyon is typically used for grazing livestock in the summer, with nearby landowners taking their livestock up in the early spring and out in late summer. A primitive route, beginning north of the Hrens' property and traveling southward, began for trailing livestock. This route, which is the center of the parties' dispute, is identified as Small Horn Canyon Road. The properties at issue and Small Horn Canyon Road are located in Townships 9 and 10 South, Range 9 West, Montana Principal Meridian, as shown in Diagram I (an excerpt of a 2008 United States Forest Service map included in the record, with labeling added):

---

[2] Shareholders of the corporation are: John and Beverly Hren; their daughters, Cheryl Hren and Renee Klakken; Jeff Nelson (Cheryl's husband); and Mike Klakken (Renee's husband).

**Diagram I**



¶5      The disputed portion of Small Horn Canyon Road is depicted with a bold line in Diagram I. It begins at Carrigan Lane and increases in elevation as it continues for approximately ten miles in a southward direction. The relevant portion of the road

4

proceeds as follows: It first crosses the 2,000-acre Hren property and enters land owned by Rebich & Sons Livestock Co.[3] In the southern portion of the Rebich land, the road splits, with the western fork traversing a 60-acre parcel owned by Bobbie Mussard (the Mussard parcel) and the eastern fork continuing through the Rebich land. The two forks come together on land owned by David Schuett. After passing through the Schuett land, the road terminates on a group of three contiguous parcels totaling 470 acres owned by Robert, Dorothy, Jerry, Tamara, Richard, Linda, and Cody Meine (the Meine parcels).[4]

¶6    The record reflects that the Meine family began using Small Horn Canyon Road roughly 90 years ago. Robert Meine's parents homesteaded in Small Horn Canyon in the early 1920s, and the Meines have continued to own land in the area since then. In 1978, Robert and Dorothy Meine owned all of the Meine property presently at issue—i.e., the Mussard and Meine parcels—plus a substantial amount of neighboring land which they have since sold. (The Meines owned much of what is now Schuett's land in Diagram I.)

¶7    The Meine lands consist generally of timber and summer livestock range. The parcels have been improved by the construction of several cabins and two ponds. In the past 90 years, the Meines and their invitees and licensees have used the Meine lands for various business, agricultural, personal, family, social, and recreational purposes. These include grazing and pasturing sheep and cattle, harvesting timber, cutting firewood,

---

[3] Jerry Meine testified that there is a familial relationship between the Meines and the Rebiches: "My mother's [Dorothy Meine's] maiden name is Rebich. She is a sister to Phil and Joe Rebich, part of the Rebich & Sons family." The Rebiches are not parties to this lawsuit.

[4] While the Forest Service map depicted in Diagram I shows the road continuing south of the three contiguous Meine parcels, passing through Schuett's southerly parcel and connecting to BLM Route 1845, testimony in the record indicates that the travelable portion of the road ends on the Meine parcels and that the road becomes a "Jeep trail" south of there.

hunting, fishing, camping, riding horses, ATV and motorcycle riding, snow mobiling, family gatherings, barbeques, hosting friends and acquaintances, guiding fishermen and hunters, and other activities associated with operation of a guest ranch. The Meines and their invitees and licensees have used Small Horn Canyon Road to access the Meines' lands for these purposes and have done so by foot, motor vehicle, and animal travel.

¶8 The Hrens purchased their ranchland in 1985 from Crampton, whose parents homesteaded the property in 1926 and 1927. John Hren, who began leasing the ranch from Crampton in the early 1970s, has grazed cattle on his ranch for over thirty years. There are corrals (labeled in Diagram I) near the north boundary of the Hren land at the bottom of a long, steep grade. Under certain weather and seasonal conditions, the grade becomes impassable for vehicles. Moreover, although Small Horn Canyon Road is sufficient to accommodate logging trucks, the road is not in a condition to accommodate a tractor-trailer hauling cattle. Jerry Meine testified that because cattle trucks are low to the ground and cannot navigate the steep grades and sharp corners of the road beyond the Hren corrals, cattle must be offloaded at that site. For these reasons, the Meines and their licensees and invitees have used an area measuring roughly 200 feet by 120 feet next to the corrals to park vehicles, to turn vehicles around, and to load or unload cattle. Use of this area began long before the Hrens owned their land and is necessary for the Meines' use of the remainder of the road.

¶9 At present, Richard and Robert Blake do not own property in Small Horn Canyon, but they maintain and take care of the Mussard parcel and will inherit that land upon Bobbie Mussard's death.

6

¶10     In the late 1970s, a tornado blew down a large patch of timber. Most of the timber was on BLM land, but roughly a quarter of it lay near the south end of the Meine parcels. BLM and the Meines entered an agreement to reconstruct, improve, and partially reroute Small Horn Canyon Road to accommodate logging trucks for harvesting and removing the downed timber. The road was constructed in its current course and condition in 1979. Pursuant to the agreement with BLM, Robert Meine contributed proceeds from his timber sales to the road construction.

¶11     The Meines have maintained the road, which is muddy in the fall and spring and tends to wash out. Maintenance work has been extensive, including bulldozing, grading, smoothing, laying gravel, repairing washouts, rebuilding bridges, installing culverts and water bars, fixing cattle guards, installing gates, spraying weeds, and removing snow. This work has required the use of heavy equipment such as bulldozers, graders, backhoes, and dump trucks. John Hren testified that the Meines have done maintenance work on the road, including the stretch through the Hren land, "[j]ust about every year."

¶12     The Meines admitted into evidence a vast array of diaries and photographs. The diary books date from 1970 to the present. Most of the photographs were taken between 1980 and the present, but some date back to the 1960s, and there are a few older photographs of Robert Meine's parents at the homestead cabin. The diaries and photographs document a variety of events relating to the Meines' real property. These include recreational and commercial activities, trailing cattle, and road work. The diaries and photographs confirm the Meines' continuous use of Small Horn Canyon Road for varying purposes at all times of year.

¶13 Following some vandalism to a cabin on the Meines' property in the early 1970s, there have been locked gates variously placed on Small Horn Canyon Road, with the consent of neighboring landowners. Keys were provided to the landowners in the area who used the road. Presently, there is a gate across Small Horn Canyon Road on a separate parcel of Hren land about one and a half miles north of the Hren corrals (labeled "locked gate" in Diagram I). In an attempt to preclude any further use of the road across their property, the Hrens changed the locks on this gate in late 2007 and did not provide keys to the other landowners. The Hrens' actions precipitated a separate lawsuit filed by the Rebiches and Schuett against the Hrens in 2008. Ultimately, these parties entered into an agreement in 2010 establishing reciprocal road easements for the benefit of the Rebich, Schuett, and Hren properties. The agreement included a provision expressly prohibiting the parties from allowing the Meines to use the easements as "invitees" of the Rebiches, Schuett, or the Hrens.

¶14 The present litigation concerns only the Meines' right to cross the Hren land. The Meines claim a prescriptive right to use Small Horn Canyon Road across the Hrens' real property for purposes of accessing the Mussard and Meine parcels. The Meines continued to use Small Horn Canyon Road during 2008, 2009, and 2010 based on their belief that they had an independent, historical right to do so. This necessitated cutting the Hrens' locks and chains in order to use the road. The Hrens, in turn, filed numerous complaints against the Meines with the Beaverhead County Sheriff's Office, alleging trespass and criminal mischief. They also made charges against Richard Blake, who maintains the Mussard property, of assault.

8

¶15 The Meines filed the instant action on June 24, 2010, seeking a determination that they hold a prescriptive easement over Small Horn Canyon Road where it crosses the Hrens' land and a permanent injunction prohibiting the Hrens from blocking or impeding the use of this easement. The Meines also requested a preliminary injunction to permit their use of the road during the pendency of the litigation. The Hrens filed an answer asserting, among other things, that the Meines' use of the road had been permissive and based on neighborly accommodation. The Hrens also asserted counterclaims of trespass, assault, conversion, injunctive relief, and punitive damages.

¶16 Following a hearing in April 2011, the District Court granted the Meines' request for preliminary injunctive relief. At that time, the court received much of the testimony and documents now in the record concerning the histories of the properties and the road. At the conclusion of the hearing, the court issued its ruling. The court expressly found that the evidence presented by the Meines was credible and that the evidence presented by the Hrens was unpersuasive. The court further found that the Meines' use of the road has always been adverse and never permissive. The District Court granted a preliminary injunction in favor of the Meines and made the following findings: There was no reasonable alternate route for the Meines to reach their land during the pendency of the litigation; the Meines would suffer irreparable injury if they were prevented from reaching their land; the Hrens had failed to demonstrate any harm they would suffer if the Meines were allowed to continue using the road as they had for the preceding 90 years; and maintaining the status quo meant that the Meines should be able to continue using the road.

¶17 A two-day bench trial was held in July 2013. The parties presented additional testimony and documentary evidence regarding the properties, the use of the road, and the Meines' activities on their own land. In this regard, the Hrens attempted to establish that Jerry and Cody Meine had used Small Horn Canyon Road in order to conduct illegal activities on the Meine parcels. Specifically, the Hrens sought to show that Jerry and Cody had engaged in commercial fishing and guiding activities at the ponds on the Meine parcels without proper licenses and permits, and that they did not have a valid permit to stock fish in one of the ponds between 2004 and 2006. On rebuttal, Jerry Meine testified that he in fact did have valid licenses and permits to guide fishermen. He presented copies of guiding licenses dating back to the 1990s. Cody also testified that he had been licensed as a guide in the 1990s and had been licensed as an outfitter from 2004 through 2011.

¶18 The District Court issued its Findings of Fact, Conclusions of Law, and Judgment on February 4, 2014. The court found the Meines' evidence clearly and convincingly credible and the Hrens' evidence unpersuasive. Based on the evidence, the court entered the following findings: The Meines have used Small Horn Canyon Road for the purposes described above since homestead days; this use has been adverse, open, and notorious, has continued at all times since 1979, and has not significantly changed in the 20-plus years that the Hrens have owned their land; the Meines have used the road whenever they wished to do so, uninterrupted by others, and did not seek permission; their use of the road has been premised on their own individual rights and not on the rights of others; the Blake brothers, who do not presently own property in Small Horn Canyon, have used the

10

road for all the same purposes as the other Meine plaintiffs, and have done so based on independent claims of right; the Hrens have been aware of the Meines' claim of right for several decades and acquiesced in the Meines' use of the road until 2007, when they started confronting the Meines and attempting to prohibit the Meines' use of the road; the Meines nevertheless continued to use and maintain the road; the Meines acted reasonably in cutting the Hrens' chains and adding their own locks (along with the Hrens' locks) to the gate to ensure that the Hrens' property was secure; the problems between Richard Blake and the Hrens were the result of the Hrens' confrontations; and the only reckless behavior showing disregard for injury occurred when the Hrens challenged the Meines on the road that the Meines had used for the preceding 90 years. The court determined that the largest vehicles to have used the road needed a road top approximately 20 feet wide, together with reasonable lateral and subjacent support.

¶19    Based on the foregoing, the District Court concluded that the Meines established a prescriptive easement over the Hrens' land. The court concluded that this easement is appurtenant to the Mussard parcel and the Meine parcels, and is in gross for the benefit of the Blakes. The court defined the easement's scope as encompassing the agricultural, commercial, recreational, and family purposes for which the Meines and their licensees and invitees historically have used the road. The court defined the easement's physical parameters as a road top 20 feet wide, together with lateral and subjacent support and sufficient width to continue historic maintenance and the trailing of livestock. The court noted that livestock straying off the road while en route to the Meine lands will not constitute a trespass, so long as the livestock and herders remain within reasonable

11

proximity of the easement. Finally, the court concluded that the Meines established a prescriptive right to use the area on the Hrens' land near the corrals for purposes of parking vehicles, turning vehicles around, and loading/unloading vehicles and livestock. The court permanently enjoined the Hrens from blocking or impairing the easement and ordered the Hrens to restore the Meines' cattle guards and gates which the Hrens had removed. As for the Hrens' counterclaims, the District Court found that the Hrens had failed to prove any of their claims.

**STANDARDS OF REVIEW**

¶20 A trial court's findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous. M. R. Civ. P. 52(a)(6); *Lyndes v. Green*, 2014 MT 110, ¶ 14, 374 Mont. 510, 325 P.3d 1225. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if a review of the record leaves this Court with a definite and firm conviction that a mistake has been made. *Larsen v. Richardson*, 2011 MT 195, ¶ 25, 361 Mont. 344, 260 P.3d 103. The question is not whether there is evidence to support different findings, but whether substantial evidence supports the findings made. *Lyndes*, ¶ 15; *Benjamin v. Anderson*, 2005 MT 123, ¶ 55, 327 Mont. 173, 112 P.3d 1039. Due regard must be given to the trial court's opportunity to judge the witnesses' credibility. M. R. Civ. P. 52(a)(6). It is the province of the trial court to weigh the evidence and resolve any conflicts between the parties' positions, and this Court will not second-guess the trial court's determinations as to the strength and weight of conflicting testimony. *Lyndes*, ¶ 15; *Larsen*, ¶¶ 25, 61. Finally, we review a trial court's conclusions of law de novo, to

determine whether the court's interpretation of the law is correct. *Wohl v. City of Missoula*, 2013 MT 46, ¶ 29, 369 Mont. 108, 300 P.3d 1119.

## DISCUSSION

¶21    *1. May a prescriptive easement arise in favor of a dominant estate that is not contiguous with the servient estate?*

¶22    An easement is a nonpossessory interest in land—a right which one person has to use the land of another for a specific purpose, or a servitude imposed as a burden upon the land. *Blazer v. Wall*, 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84. An easement may be "appurtenant" or "in gross." *Davis v. Hall*, 2012 MT 125, ¶ 18, 365 Mont. 216, 280 P.3d 261; *Blazer*, ¶ 24. An easement appurtenant is an easement that burdens one parcel of land for the benefit of another parcel of land; in other words, the easement serves the owner of the benefitted parcel and passes with the title to that land. The benefited parcel is known as the dominant estate, and the burdened parcel is termed the servient estate. An easement appurtenant must have both a dominant estate and a servient estate. *Davis*, ¶ 18; *Blazer*, ¶ 24. In contrast, an easement in gross benefits the holder of the easement personally, not in connection with his or her ownership or use of a particular parcel of land. Thus, with an easement in gross, no dominant estate (benefitted parcel) exists and the easement right cannot pass with the title to any land. *Davis*, ¶ 18; *Blazer*, ¶ 24.

¶23    An easement may be created by an instrument in writing (express easement), by implication from necessity or existing use (often referred to as "by operation of law"), by prescription, by condemnation, or by common-law dedication. *Davis*, ¶ 19; *Yellowstone*

13

*River, LLC v. Meriwether Land Fund I, LLC*, 2011 MT 263, ¶ 30, 362 Mont. 273, 264 P.3d 1065. This case involves an easement created by prescription.

¶24 Prescription refers to the acquisition of an easement by adverse use of another's land. *Han Farms, Inc. v. Molitor*, 2003 MT 153, ¶ 12, 316 Mont. 249, 70 P.3d 1238, *overruled on other grounds by Pedersen v. Ziehl*, 2013 MT 306, ¶ 24, 372 Mont. 223, 311 P.3d 765. "Prescriptive easements are based on the notion that if one uses the property of another for a certain period without permission and the owner fails to prevent such use, the prolonged usage should be treated as conclusive evidence that the use is by right." Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 5:1, 5-2 (2014). Prescription doctrine reflects "the philosophy that established patterns of land possession and use should be protected and that a diligent occupant should be rewarded at the expense of a careless owner." Bruce & Ely, *supra*, at 5:1, 5-5. The doctrine encourages owners to prevent unauthorized users from developing reliance interests in continued use of their land, and protects the reliance interests of those whose uses have continued without interruption for the prescriptive period. Prescription thus "fulfills expectations fostered by long use" and "conforms titles to actual use of the property." Restatement (Third) of Prop.: Servitudes § 2.17 cmt. c (2000).

¶25 As noted, the District Court found that the Meines had acquired an easement appurtenant for the benefit of the Mussard parcel and the Meine parcels, and an easement in gross for the benefit of Richard and Robert Blake personally. Both an easement appurtenant and an easement in gross may be acquired by prescription. *E.g., Slauson v. Marozzo Plumbing & Heating, LLC*, 2009 MT 333, ¶¶ 17-19, 353 Mont. 75, 219 P.3d

14

509 (appurtenant); *Rasmussen v. Fowler*, 245 Mont. 308, 313, 800 P.2d 1053, 1056 (1990) (in gross) (citing Restatement of Prop.: Servitudes § 454 (1944)); *see also* Bruce & Ely, *supra*, at § 5:4, 5-22.

¶26    The Hrens contend that the District Court committed legal error in recognizing a prescriptive easement over a servient estate (the Hrens' land) that is not contiguous with the dominant estates (the Mussard parcel and the Meine parcels).  The Hrens cite *Davis*, ¶¶ 29-32, for the proposition that the dominant and servient estates must be contiguous and that one terminus of the claimed easement must lie on the dominant estate.  The Hrens read *Davis* as recognizing an appurtenant easement over servient property for the benefit of noncontiguous dominant property only if the easement is express (i.e., created by written instrument).  We disagree.

¶27    In *Davis*, we explained that, with respect to the creation of easements appurtenant, courts have adopted two different views concerning the geographic relationship of the dominant and servient estates.  The prevailing view is that "'the dominant and servient estates need not physically abut in order to create an easement appurtenant.'"  *Davis*, ¶ 28 (quoting Bruce & Ely, *supra*, at § 2:6, 2-17 to 2-18).  But under the minority view, "'an easement cannot be appurtenant unless the dominant and servient estates are contiguous at some point.'"  *Davis*, ¶ 28 (quoting Bruce & Ely, *supra*, at § 2:6, 2-18).  We adopted the minority view with respect to *implied* easements and adhered to our precedents stating that the dominant and servient parcels must be held as a single tract of land or contiguous tracts of land at the time of severance.  *Davis*, ¶ 29.  The rationale for this rule

is that implied easements arise by operation of law,[5] are based on the inferred intent of the parties, are considered with extreme caution, and therefore are limited to narrow situations. *Davis*, ¶ 29. However, we decline to extend this minority rule to *prescriptive* easements.

¶28 In contrast to an implied easement, where the intent of the parties is presumed by operation of law, the existence of a prescriptive easement is premised upon the open, notorious, and adverse actions of either party. Therefore, if the elements of prescription are established, it is not necessary to infer the intent of the parties by operation of law because the actions of the parties speak for themselves—they have been demonstrated by clear and convincing facts. The burden on a servient estate is therefore not based upon operation of law, but rather on the parties' own actions and conduct.

¶29 In *Davis*, this Court relied upon the rationale advanced in *Jones v. Stevens*, 177 N.E. 91 (Mass. 1931), in concluding that the dominant and servient estates do not have to be contiguous for an express easement to exist. *Davis*, ¶¶ 30-31. The *Jones*

---

[5] "Operation of law" is "[t]he means by which a right or a liability is created for a party regardless of the party's actual intent." *Black's Law Dictionary* 1265 (Bryan A. Garner ed., 10th ed. 2014). In a generic sense, the term expresses the manner in which a person acquires rights without any act of his own. *Pioneer Natl. Title Ins. Co. v. Child, Inc.*, 401 A.2d 68, 70-71 (Del. 1979). For example, upon the death of one of two joint tenants, title to the whole is vested in the surviving joint tenant automatically, i.e., by operation of law, without any act by the survivor. *Pioneer Natl.*, 401 A.2d at 71 n.3; *In re Estate of Afrank*, 2012 MT 289, ¶ 9, 367 Mont. 334, 291 P.3d 576; *In re Estate of Garland*, 279 Mont. 269, 272, 928 P.2d 928, 930 (1996). With implied easements by necessity or by existing use, the owner of a single area of land conveys part of that land without expressly granting or reserving an easement for the benefit of the conveyed or retained parcel, so "the law reads into" the deed "a presumed intent on the part of parties" to create the easement, either so as to avoid landlocking a portion of the land (necessity), or so as to continue an apparent, continuous, and reasonably necessary use of one part of the land for the benefit of the other (existing use). *Yellowstone River*, ¶¶ 30, 31 (internal quotation marks omitted). Such an easement arises "by operation of law, not by the actions of either party." Bruce & Ely, *supra*, at § 4:8, 4-30; *see also Yellowstone River*, ¶¶ 25, 35-36.

court, however, further reasoned that contiguous parcels are not required for the creation of an easement-by prescription, observing:

> In *Graham v. Walker*, *78 Conn. 130, 61 A. 98*, the court held that a way by prescription may be appurtenant to particular land although the dominant and servient tenements are a substantial distance apart and the way is accessible only by a highway upon which both closes abut. The court, after referring to the fact that a right to convey water from a distant source of supply may be appurtenant to a tenement separated from that in which the supply exists by several intervening parcels belonging to different proprietors, said at page 135: "In like manner, a way from one close to and through another is none the less appurtenant to the former if it run over the intervening lands of numerous proprietors. . . . That a way cannot be appurtenant to a close at which it neither begins nor ends has been often asserted by text writers, and is not without countenance from judicial decision. . . . The better reason seems to us to lead to a contrary conclusion and to be supported by the rules of common law. An appurtenant way ordinarily does touch the close to and from which it leads, and that it should is commonly essential to its enjoyment; but it is not always thus essential, and when not, the dominant may be separated even at a long distance from the servient tenement."

*Jones*, 177 N.E. at 94.

¶30    Our conclusion that contiguous estates are not necessary for creation of an easement by prescription finds support in other jurisdictions as well. In *Pevear v. Hunt*, the Tennessee Court of Appeals held that a prescriptive easement may be created even though the dominant and servient estates are not contiguous:

> [W]e will consider the principal legal issue in this matter to be whether non-contiguousness bars the establishment of prescriptive easement rights in Tennessee.
>
> As the parties had indicated in their briefs, there is a split of authority on this question and Tennessee [courts] have not yet spoken. However, we do so now. To ascertain our response this Court has reviewed the rulings of other jurisdictions, and finds that the majority position, as well as the trend in decisions on this issue, is in favor of a rule which does not require the servient tenement to be adjacent to the dominant tenement.

Rather, we hold, as the Supreme Court of Pennsylvania did in 1965, that: "The mere fact that an easement, to be of any benefit to the dominant tenement, must traverse land of another does not, of itself, destroy the easement. Although the existence of a servient tenement is a prerequisite to the creation of an easement appurtenant, it is not necessary that the servient and dominant tenements be contiguous parcels of land."

*Pevear v. Hunt*, 924 S.W.2d 114, 116 (Tenn. Ct. App. 1996) (quoting *Woodlawn Trustees, Inc. v. Michel*, 211 A.2d 454, 455-56 (Penn. 1965)).

¶31    We find this to be the better reasoned approach. We leave decisions regarding the manner of access through intervening estates to the owner of the dominant estate, who is in the best position to decide, based upon a multitude of factors, the best course of action to take. Here, in particular, a requirement that the estates be contiguous would produce an anomalous result, as the Meines have no dispute with intervening landowners Rebiches and Schuetts regarding the Meines' access. We therefore decline to impose such a requirement, and conclude that the District Court correctly interpreted and applied the law when it found that a prescriptive easement could exist despite the dominant and servient estates being non-contiguous.

¶32    *2. Is the creation of a prescriptive easement contingent on a finding that the dominant landowner's activities on the dominant estate are not illegal?*

¶33    The Hrens argue that a prescriptive easement cannot be established or enforced when the use of the easement is to facilitate an illegal activity. The Hrens maintain that the Meines were crossing their property to fish and stock ponds without a permit and were outfitting and guiding when they were not licensed. While stating that "[n]o Montana case directly addresses the question of whether use for illegal purposes can establish a prescriptive easement," the Hrens argue that contract principles, specifically

18

the principle that a contract for an illegal purpose is void *ab initio* and cannot be enforced by a court, should be applied to defeat the Meines' prescriptive easement over the Hrens' land.

¶34 We find it unnecessary to decide if a prescriptive easement can be established or enforced because the use of the easement is for an illegal purpose. Here, the District Court specifically found that the Meines used their land for numerous purposes, including grazing and pasturing sheep and cattle, harvesting timber, cutting firewood, camping, riding horses, hosting gatherings of friends and family, and other personal, social, and recreational purposes. The evidence therefore supported a finding that the Meines used their land for many lawful purposes. Further, the District Court did not find credible the Hrens' allegations of an unlawful purpose. We conclude the findings made by the District Court are supported by substantial evidence. It is therefore unnecessary to consider whether a prescriptive easement, under these facts, is invalid or unenforceable due to alleged outfitting, guiding, fishing, and hunting violations.

¶35 *3. Does the evidence support the District Court's finding of a prescriptive easement in this case?*

¶36 The Hrens argue that the evidence does not support a finding that Meines' adverse use continued for the statutory five-year period. The Hrens maintain that the only way the Meines could establish adverse use for the statutory period is through the doctrine of "tacking" and evidence of privity between successive users of the easement. The Hrens argue that the Meines introduced no evidence of tacking or privity.

19

¶37 The burden at trial on a party seeking to establish an easement by prescription is to show, by clear and convincing evidence, open, notorious, exclusive, adverse, continuous, and uninterrupted use of the claimed easement for the full statutory period of five years. *See* § 70-19-401, MCA; *Leichtfuss v. Dabney*, 2005 MT 271, ¶ 24, 329 Mont. 129, 122 P.3d 1220; *Wareing v. Schreckendgust*, 280 Mont. 196, 204, 206, 930 P.2d 37, 42, 43 (1996); *Bonnie M. Combs-Demaio Liv. Trust v. Kilby Butte Colony, Inc.*, 2005 MT 71, ¶ 14, 326 Mont. 334, 109 P.3d 252. A subsequent landowner may demonstrate a prescriptive easement either by evidence that the prescriptive easement already existed at the time of transfer, or through the doctrine of tacking. *Leichtfuss*, ¶ 24. The doctrine of tacking involves "'the joining of consecutive periods of possession by different persons to treat the periods as one continuous period; esp., the adding of one's own period of land possession to that of a prior possessor to establish continuous adverse possession for the statutory period.'" *Leichtfuss*, ¶ 24 n.4 (quoting *Black's Law Dictionary* 1465 (Bryan A. Garner, ed., 7th ed. 1999)). It is long established in this state that "tacking of prescriptive periods is permissible when there is a privity between the successive users of the easement." *Groshean v. Dillmont Realty Co.*, 92 Mont. 227, 241, 12 P.2d 273, 276 (1932).

¶38 The District Court found that the "[Meines] and their predecessors have used the road . . . since homestead days for at least ninety years"; that the "use has continued at all times since 1979"; that the Meines' use of the road was open and notorious "for decades"; and that the Meines "each relied upon their own individual rights to use the road, and not upon the rights to use the road held by another Plaintiff or third party." The

District Court specifically found that the Hrens "acquiesced" in the Meines' use of the road until 2007 and that "[i]n correspondence in 2007, [the Hrens] admitted their knowledge of decades of use of the road by [the Meines]."[6] Even after the Hrens began to lock gates in 2007, the Meines cut the locks and chains in order to use the road.

¶39 The testimony, photographs, and documents support the District Court's findings that the Meines' adverse use of the road was for a lengthy period of time—at a minimum, continuous use was established since 1979. This included evidence of the Meines' numerous recreational and commercial activities, the Meines' trailing livestock, and the road work and maintenance the Meines did on Small Horn Canyon Road without seeking permission from the Hrens and pursuant to the Meines' belief that they had a claim of right to use the road. Moreover, the District Court's conclusion that the Hrens have known of the Meines' claim of right for several decades is supported by substantial evidence.

¶40 Although the District Court did not identify a specific five-year period of prescription, the record reflects that the Meine family began using Small Horn Canyon Road roughly 90 years ago. Robert Meine's parents homesteaded in Small Horn Canyon in the early 1920s, and the Meines have continued to own land and use Small Horn Canyon Road since that time. Significantly, in 1978, Robert and Dorothy Meine owned all of the Meine property presently at issue—both the Meine and Mussard parcels—plus

---

[6] Passive acquiescence to the use of one's land by another is not evidence of permissive use. *Lyndes*, ¶ 19. Thus, the District Court's finding of acquiescence does not alter the correctness of its finding of a prescriptive easement.

a substantial amount of neighboring land and what is now the Schuett land.[7] Their ownership continued for five years, without transfer, during a timeframe in which the District Court specifically found adverse use was continuous and uninterrupted. The evidence therefore establishes that, at a minimum, from 1979 until 1984, the Meines' property was held by Robert and Dorothy Meine who used Small Horn Canyon Road openly, notoriously, and adversely for a continuous and uninterrupted five-year period. The prescriptive easement was thus established during their ownership and prior to any subsequent transfers.

¶41   A prescriptive easement, "once established, is not divested by subsequent transfer of the servient estate." *Lemont Land Corp v. Rogers*, 269 Mont. 180, 183, 887 P.2d 724, 726 (1994). "A transfer of real property passes all easements attached to it. . . . Thus, the valid conveyance of real property conveys all easements that attach to the property." *Burleson v. Kinsey-Cartwright*, 2000 MT 278, ¶ 16, 302 Mont. 141, 13 P.3d 384 (citing § 70-20-308, MCA). The prescriptive easement, established at least by 1984 for the benefit of the Meines' property, conveyed with any subsequent transfers. It is therefore unnecessary to apply the tacking doctrine.

¶42   The Hrens also argue that the Meines originally began crossing Hrens' land as a neighborly accommodation, and that the Hrens' predecessors locked the gates, although they continued to permit their neighbors access for grazing livestock. The Hrens argue

---

[7] Jerry, Tamara, Richard and Linda Meine acquired a small parcel from Rebich and Sons Livestock in 2005. They were the owners of this property until 2010. The District Court's findings regarding use of the road apply to this parcel as well, and the statutory period from 2005 to 2010, has been satisfied.

that the Meines use was through neighborly accommodation and that accordingly, the Meines' claim of prescriptive right is defeated.

¶43 Use of a neighbor's land based on neighborly accommodation or courtesy is not adverse and cannot ripen into a prescriptive easement. *Larsen*, ¶ 59 (citing *Heller v. Gremaux*, 2002 MT 199, ¶ 14, 311 Mont. 178, 53 P.3d 1259). The District Court, however, specifically found that "[Hrens] suggestion that [Meines] sought permission to use the road is not credible." The District Court explained "[i]t is not credible that landowners who had used a road for seventy years would then request permission to do so from [Hrens] who showed up comparatively recently as landowners. [Hrens] were aware of [Meines] use of the road when [Hrens] purchased the land and before."

¶44 The basis of the Hrens' claim stems from letters written by their predecessor, Crampton, purportedly limiting use of the road for ranching purposes and thus implying use was through neighborly accommodation. The District Court weighed this letter against evidence demonstrating that the Meines' use was not permissive, but rather pursuant to a claim of right. It is the province of the trial court to weigh the evidence and resolve any conflicts between the parties' positions, and this Court will not second-guess the trial court's determinations as to the strength and weight of conflicting testimony. *Lyndes*, ¶ 15; *Larsen*, ¶¶ 25, 61. In light of the District Court's findings regarding credibility of the Hrens' assertions and the extensive record supporting the existence of a prescriptive easement, we conclude that the District Court's findings are supported by substantial evidence.

¶45    *4. Did the District Court err in determining the nature and the scope of the prescriptive easement over the Hrens' property?*

¶46    The Hrens make a brief argument that the scope of the easement contained in the District Court's judgment is not supported by the record. The Hrens argue that as of 2010, the road was no wider than 14 feet. The Hrens maintain that the District Court ignored this evidence and granted an easement 20 feet in width, and additionally granted the Meines the right to use the Hrens' corrals along with an area surrounding the corrals. Finally, the Hrens argue that the record does not support the inclusion of invitees and licensees in the scope of the easement.

¶47    The record demonstrated that the historic use of the road since 1979 included semi-truck traffic. The width of 20 feet was intended to accommodate this traffic, to facilitate the passing of vehicles, and to avoid further trespass concerns if a vehicle needed to get off the road. The record also supports a finding that, in addition to the Meines, family members and third parties not named in this action used Small Horn Canyon Road, including individuals hired to perform construction and harvest timber on the property, hunters, fishermen, and guest ranch clients.

¶48    The Meines concede that they have "no expectation, intention, or basis to use the corrals," and that the Hrens are misreading the judgment, which included the corrals as a reference point to locate a 120 feet by 200 feet area for the Meines to park vehicles, unload cattle, and turn vehicles around. We agree that the District Court's judgment does not grant a right to use the Meines' corrals, but merely uses the corrals' location as a

reference point for locating the parking area included in the Meines' prescriptive easement.

## CONCLUSION

¶49 The dominant and servient estates need not be contiguous in order to establish an easement by prescription. We will not consider alleged illegalities of the dominant landowner's activities when the District Court did not find the allegations credible, and when other activities by the dominant landowner were undisputedly lawful. We find it unnecessary to apply the doctrine of tacking or require evidence of privity when the evidence supported adverse use of the servient estate during a five-year period of ownership of the dominant estate by Dorothy and Robert Meine, thus establishing the prescriptive easement prior to any transfers. Finally, the evidence supported the District Court's determinations as to the width and scope of the easement. The judgment of the District Court is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER