FILED

July 14 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0354

DA 14-0354

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 201

BOS TERRA, LP,

       Plaintiff and Appellant,

   v.

KENT and JULIE BEERS,

       Defendants and Appellees.

APPEAL FROM:    District Court of the Tenth Judicial District,
                      In and For the County of Judith Basin, Cause No. DV 13-1
                      Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Thane Johnson, Johnson, Berg & Saxby, PLLP, Kalispell, Montana

       For Appellees:

       Jeffrey J. Oven, Elizabeth M. Varela, Crowley Fleck PLLP, Billings, Montana

                             Submitted on Briefs:  March 25, 2015
                                     Decided:  July 14, 2015

Filed:

                                   Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Bos Terra, LP, appeals from the final judgment of the Tenth Judicial District Court finding that an easement created by a 1977 Real Estate Easement Agreement (Agreement) was in gross, rather than appurtenant, and that Bos Terra had no rights under the Agreement absent grantor's consent to assignment.  We affirm.

¶2     The parties raise three issues on appeal:

1.     *Whether the District Court erred when it granted summary judgment determining that the June 20, 1977 easement was an easement in gross.*

2.     *Whether the District Court erred in holding that Bos Terra is a third party assignee and not a successor to the easement.*

3.     *Whether the District Court erred when it denied summary judgment on Bos Terra's claim of a prescriptive easement in Enterprise Ditch because the Court found use to be permissive?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     The underlying facts are largely undisputed by the parties.  In 1977, neighboring Judith Basin ranch owners, E. Viola Barrett, Wayne and Marian Stevenson, and Viktor and Lillian J. Kolar, signed a contract entitled "Real Estate Easement Agreement."  The contract defines Barrett as "Grantor" and the Stevensons and Kolars as "Grantees" and provides, in relevant parts:

Section One:  Right of Way

In consideration of the sum of one dollar ($1.00) and other good and valuable consideration . . . Grantor . . . hereby grants, sells, and conveys to Grantees and their heirs and successors, a right of way for the purposes of laying, constructing, operating, inspecting, maintaining, repairing, replacing, substituting, and removing a pipeline . . . for the transportation of water from the Judith River at a location and on a route to be selected by Grantees, on, in,

2

over, and through the following land in Judith Basin County, State of Montana [legal description of Barrett's land].

Section Two:  Term

The rights granted herein shall be possessed and enjoyed by Grantees, their heirs and successors, so long as the pipeline and appurtenances constructed hereto shall be maintained and operated by Grantees or Successors in compliance with this Real Estate Easement.

Section Six:  Assignments

The rights granted herein shall not be assignable together or separately and in whole or in part without written permission signed by the Grantor.  Such permission will not be unreasonably withheld.

Section Thirteen:  Effect of Agreement

This agreement shall be binding on the heirs, legal representatives, successors and assigns of the parties hereto.

The Agreement thus describes the location of the pipeline, without making reference to a dominant tenement, and contains a provision requiring consent from the Grantor before any rights can be lawfully assigned to a third party.  No other transaction documents or documents of conveyance have been identified which establish, reference, or create a dominant estate.

¶4     Pursuant to the Agreement, the Stevensons and Kolars installed a pipeline on Barrett's property that ran from the Judith River in a southerly direction to the top of a hill.  At the top of that hill, a new ditch - approximately 100 feet long - was dug to connect the pipeline to a defunct irrigation ditch referred to throughout the district court proceedings as "Enterprise Ditch."  The parties agree that at the time the Agreement was executed, Enterprise Ditch had been abandoned and had not been used to irrigate any land by the Stevensons and the Kolars.

3

Enterprise Ditch ran through Barrett's property for approximately one mile, then through the property of two other neighbors before entering onto the Stevensons' and Kolars' land. As a result of this Agreement, Enterprise Ditch was reconstituted and the Stevensons and Kolars began irrigating with water from the new system the following year in 1978. Over the ensuing decades, the particular tracts of land irrigated by the water system changed, but the neighbors continued the practice of communicating about putting the pump in each spring and removing the pump each fall, and the least intrusive means to access Barrett's property for purposes of the Agreement.

¶5      Kent and Julie Beers acquired the Barrett property in 1999 and continued to grant access to the Stevensons and the Kolars in the manner provided for in the Agreement. Eleven years later, in February of 2011, Bos Terra acquired the Stevensons' and Kolars' property interests. Bos Terra, a large agribusiness company, converted the property from a registered angus ranch operation to a feed lot. Shortly after the purchase, Bos Terra entered the Beers' property, without seeking permission, and began diverting water from the Judith River with the purported intent of doubling the number of acres irrigated from 410 to 773. Bos Terra asserted in the district court proceedings that it was a "successor in interest" and, therefore, enjoyed the rights and benefits of the Agreement. The Beers believed Bos Terra to be an assignee under the Agreement and on July 7, 2011, sent a letter to Bos Terra advising that consent was needed for assignment of any rights. There was no reply to this letter nor to a second sent January 16, 2012. Finally, by letter dated April 13, 2012, the Beers informed Bos Terra that it "was prohibited from entering the property for any reason other than to remove its equipment and restore the property as nearly as practical to its original condition."

4

The record establishes that up to this point Bos Terra had not sought, and the Beers had not granted, consent to assignment of the rights in the Agreement. On January 31, 2013, the Kolars and the Stevensons assigned all right, title, and interest in the property to Bos Terra. On February 18, 2013, Bos Terra sought the Beers' consent. The Beers refused and on April 2, 2013, Bos Terra filed a complaint in the Tenth Judicial District.

¶6 Bos Terra's complaint sought a declaration that the real estate Agreement establishes an easement appurtenant that runs with the land it purchased from the Stevensons and Kolars; that Bos Terra's property is the dominant estate and the Beers' property is the servient estate; and that the Beers must permit Bos Terra to exercise its rights under the Agreement. In addition, Bos Terra sought partial summary judgment declaring that it has a valid prescriptive easement across the Beers' property.

¶7 The Beers filed a cross Motion for Partial Summary Judgment asserting the Agreement creates an easement in gross and not appurtenant; that Bos Terra was required to obtain consent from the Beers before any rights or interests under the Agreement could be assigned to Bos Terra; and that Bos Terra has no rights or interests under the Agreement absent Beers' consent to assignment.

¶8 On February 2, 2014, the District Court issued its ruling on the cross Motions for Partial Summary Judgment. The court, having found the issue of assignability determinative, granted partial summary judgment to the Beers concluding (1) the Agreement contained a valid consent to assignment provision which mandated written permission from the grantor; and (2) Bos Terra had not acquired an easement in the ditch connected to the pipeline and therefore had no right to access, occupy, or use the ditch on the Beers' property.

5

The issue of whether the Beers reasonably withheld their consent was submitted to a jury. Following a jury trial, a verdict was returned on April 9, that the Beers had acted reasonably in refusing consent to the assignment. The court's final judgment incorporated its summary judgment ruling and the jury's verdict. Bos Terra appeals only the summary judgment ruling to this Court.

## STANDARD OF REVIEW

¶9     We review a district court's ruling on summary judgment de novo, using the same criteria as the district court set forth in M. R. Civ. P. 56. *Hansen v. Bozeman Police Dep't*, 2015 MT 143, ¶ 12, 379 Mont. 284, ___P.3d___.  Summary judgment is appropriate when there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  M. R. Civ. P. 56(c)(3).

## DISCUSSION

¶10     *1. Whether the District Court erred when it granted summary judgment determining that the June 20, 1977 easement was an easement in gross.*

¶11     An easement is a non-possessory interest in land.  It is a right which one person has to use the land of another for a specific purpose, or a servitude imposed as a burden upon the land. *Meine v. Hren Ranches, Inc.*, 2015 MT 21, ¶ 22, 378 Mont. 100, 342 P.3d 22 (citing *Blazer v. Wall*, 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84).  An easement can be either "appurtenant" or "in gross." *Davis v. Hall*, 2012 MT 125, ¶ 18, 365 Mont. 216, 280 P.3d 261.  An easement appurtenant benefits one particular parcel of land, called the dominant estate or tenement.  See § 70-17-103, MCA.  An easement in gross, on the other hand, benefits the holder of the easement personally and is not necessarily tied to his or her

6

ownership of a specific parcel of land. *Blazer v. Wall*, 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84. Thus, with an easement in gross, no dominant tenement exists and the easement right does not pass with title to any land. *Blazer*, ¶ 24.

¶12 Under Montana law, an easement appurtenant must have both a dominant and a servient tenement. *Meine*, ¶ 22; *Davis*, ¶ 18; *Blazer*, ¶ 24. The identities of the tenements must be 'ascertainable with reasonable certainty' from the transaction documents. *Davis*, ¶ 20 (quoting *Blazer* ¶¶ 51, 54, 56-57). When the identity of the dominant tenement has been omitted and cannot be ascertained from the documents of conveyance, an easement appurtenant has not been "adequately described." *Davis*, ¶ 20.

¶13 In the present case, the single conveyance document is the Agreement, which contains no description of a dominant tenement. The Agreement does not state that it would run with the land or make mention of the terms "easement appurtenant." Bos Terra asserts that the dominant estate was "the land obviously irrigated by the ditch" and that the Department of Natural Resources and Conservation (DNRC) water change applications provided notice of the dominant tenement. The record shows, however, that the land irrigated by the ditch has changed over time, making it difficult to determine what property is the benefitted parcel. Moreover, such an assertion satisfies neither the requirement that the dominant tenement be adequately described, nor that the reference and description be contained within the conveyance documents. While we have held that a dominant tenement can be described by reference in an instrument of conveyance to a plat or certificate of survey in which the easement is adequately described, this must arise expressly, not by implication. *Blazer*, ¶ 41. Furthermore, a recorded instrument cannot impart constructive notice that an easement

7

burdens a particular parcel of land for the benefit of another if the intended dominant and servient estates are only ascertainable by resort to parol evidence. *Blazer*, ¶ 74. "Requiring subsequent purchasers to investigate not only their chain of title but also the 'context' within which each conveyance in the chain was executed would virtually destroy the utility of the real estate recording system." *Broadwater Development, LLC v. Nelson,* 2009 MT 317, ¶ 21, 352 Mont. 401, 219 P.3d 492. Thus, extrinsic evidence may not be used to supply a property description of the dominant tenement when it has been omitted or cannot be ascertained from the transaction documents. *Broadwater Development*, ¶ 21.

¶14 We also find it significant that if the easement was appurtenant, then there would have been no reason to include the assignment provision in the Agreement. The provision for assignment contemplates severing the right to use the easement from the land and transferring that right to a third party. An appurtenant easement is attached to a specific tract of land and cannot be extended for a purpose unconnected with the dominant tenement. *Leffingwell Ranch, Inc. v. Cieri*, 276 Mont. 421, 432, 916 P.2d 751, 758 (1996).

¶15 No description of the dominant estate appears in the Agreement, in any document referenced by the Agreement, or in any document appearing in the chain of title. Accordingly, the Agreement does not create an easement appurtenant and the District Court was correct in concluding that the easement was in gross.

¶16 *2. Whether the District Court erred in holding that Bos Terra is a third party assignee and not a successor to the easement.*

¶17 The construction of a writing granting an interest in real property, such as an easement, is governed by the rules of contract interpretation. *Broadwater Development*, ¶

19; § 70-1-513, MCA. When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible. Section 28-3-303, MCA. Courts are to consider the contract as a whole in order to give effect to every part if reasonably practicable, each clause helping to interpret the other. Section 28-3-202, MCA. Montana law enforces provisions for non-assignment in a contract. *Rother-Gallagher v. Mont. Power Co.*, 164 Mont. 360, 364, 522 P.2d 1226 (1974).

¶18 In this instance, the District Court concluded that the Agreement contained a valid assignment clause based upon its analysis of Sections One, Two, Six, and Thirteen of the Agreement, Opinion, ¶ 3. The portions of those sections relevant to the specific issue of assignability provide as follows:

> Sections One: <u>Right of Way</u>
> … Grantor and Lessee hereby grants, sells, and conveys to Grantees and their *heirs and successors*…
>
> Section Two: <u>Term</u>
> The rights granted herein shall be possessed and enjoyed by Grantees, their *heirs and successors*…
>
> Section Six: <u>Assignments</u>
> The rights granted herein *shall not be assignable* together or separately and in whole or in part without written permission signed by Grantor. Such permission will not be unreasonably withheld.
>
> Section Thirteen: <u>Effect of Agreement</u>
> This agreement shall be binding upon the *heirs, legal representatives, successors, and assigns* of the parties hereto.

(Emphasis supplied.)

¶19 The district court reasoned that the operative sections, Section One (which defines the right of way) and Section Two (which defines from whom, for how long, and under what

9

conditions the right of way exists), apply only to the "Grantees, their heirs and successors." This construction is reasonable and consistent with the plain language of the sections, which make no reference to "assigns." Section Six of the Agreement (which provides that an assignment is not effective without written permission from the grantor) is the only section, apart from Section Thirteen, which refers to assignment and assignees. Section Six can be reasonably construed with Section Thirteen (which provides upon whom the Agreement is binding) to allow for transfers of the easement only to heirs and successors, or to approved assigns. The District Court found this interpretation gives logical effect to all provisions of the agreement. We agree; as long as the ranches were in the hands of the three families (including their heirs and successors), the parties agreed that the rights would transfer without written permission. Should any third parties become involved, however, then there must be written consent from the grantor.

¶20    Finally, Bos Terra is neither an "heir" nor "successor," as those terms are defined in Montana probate law concerning succession of real property through descent and distribution. An "heir" is defined as "persons, including the surviving spouse and the state, who are entitled under the statutes of intestate succession to the property of a decedent." Section 72-1-103(22), MCA. "Successors" include "persons, other than creditors, who are entitled to property under the decedent's will[.]" Section 72-1-103(48), MCA. Use of "heirs" and "successors" in the Agreement indicates an intent to benefit the families of the grantor and grantees only, and not third party assignees. Bos Terra is neither an heir nor a successor to the Agreement under Montana law.

¶21    Based on the foregoing, the District Court correctly determined that the Agreement contained a valid provision requiring grantor's consent to assignment and that the Beers had the right to reasonably withhold their consent to an assignment to Bos Terra.

¶22    *3. Whether the District Court erred when it denied summary judgment as to Bos Terra's claim of a prescriptive easement in Enterprise Ditch because the Court found use to be permissive?*

¶23    A party seeking to establish a prescriptive easement has the burden of proving its use was open, notorious, exclusive, adverse, and continuous for a full, consecutive, five-year statutory period prior to filing the lawsuit. *Swandal Ranch Co. v. Hunt*, 276 Mont. 229, 233, 915 P.2d 840 (1996). See also § 70-19-401, MCA. Failure to prove any element for the full prescriptive period is fatal to the entire claim. *Grimsley v. Estate of Spencer*, 206 Mont. 184, 196, 670 P.2d 85 (1983).

¶24    Here, Bos Terra argues that the use of Enterprise Ditch has been adverse, in spite of the Agreement, since approximately 1978. Essentially, Bos Terra seeks to separate use of the pipeline from use of Enterprise Ditch and maintains that because the Agreement refers only to a pipeline that any use of Enterprise Ditch was adverse. Bos Terra claims that there is no evidence that the Grantors (now deceased) provided permission to use the ditch, as compared to the pipeline, that crosses their property. We find this argument unconvincing. The purpose of the Agreement was to transport water from the Judith River for the use and benefit of two neighbors, the Kolars and Stevensons. It would make no sense to interpret the contract as providing only for a pipeline which was incapable of delivering the water to the intended beneficiaries. Permission from the Grantor to use Enterprise Ditch is implicit in the purpose of the Agreement to move water from the river to the Kolars' and Stevensons'

11

properties. The only reasonable and logical construction of the Agreement is that the grantees' right to use Enterprise Ditch to move water transported from the pipeline was based upon implied, if not express, permission from the grantor. This is consistent with neighborly accommodation and the desire to render assistance to neighbors and friends without requiring a licensing agreement or contract for all aspects of the accommodation. *Lance v. Richardson*, 2011 MT 195, ¶ 59, 361 Mont. 344, 260 P.3d 103.

¶25 The construction and interpretation of a contract is a question of law for the court to decide. *Ophus v. Fritz*, 2000 MT 251, ¶ 19, 11 P.3d 1192 (internal citations omitted). We review a district court's conclusions of law for correctness. *Ophus*, ¶ 19. The District Court's ruling that the use of the ditch was permissive is consistent with a logical interpretation of the parties' intent and purpose of their Agreement. The court, therefore, did not err in denying summary judgment to Bos Terra on its claim of a prescriptive easement. Bos Terra's adverse use, which began when consent was denied by Beers, was not continuous for the required five-year statutory period prior to the filing of the proceedings. Section 70-19-404, MCA.

## CONCLUSION

¶26 The easement created by the Agreement failed to identify a dominant estate in any transaction document, and was in gross. The Agreement contained a valid assignment provision requiring consent of the grantor, and Bos Terra had no rights under the Agreement absent a valid consent to assignment from the Beers. Finally, Bos Terra did not establish a prescriptive easement because use of the Enterprise Ditch was permissive and not adverse.

¶27 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA