FILED

September 8 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0798

DA 14-0798

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 265

TERRANCE LEE SCOTT and
LAURIE A. SCOTT,

      Plaintiffs and Appellants,

   v.

THE LEE AND DONNA METCALF
CHARITABLE TRUST, PETER MICHAEL
MELOY, Trustee and LEWIS AND CLARK
COUNTY,

      Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clerk, Cause No. ADV 2013-501
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            R. J. "Jim" Sewell, Jr., Craig D. Charlton, Scott H. Clement, Smith Law
Firm; Helena, Montana

      For Appellees:

            Peter Michael Meloy, Meloy Law Firm; Helena, Montana

            Leo Gallagher, Lewis and Clark County Attorney, K. Paul Stahl,
Lewis and Clark Deputy County Attorney; Helena, Montana

Submitted on Briefs:  July 8, 2015
Decided:  September 8, 2015

Filed:

                              Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Terrance Scott and Laurie Scott (the Scotts) appeal from the order of the Montana First Judicial District Court, Lewis and Clark County, resolving cross-motions for summary judgment in favor of the Lee and Donna Metcalf Charitable Trust (the Trust). We affirm.

## ISSUES

¶2      We review the following issues:

1.      *Did the District Court err by deciding that the Metcalf Restrictions were enforceable against the Scotts by the Trust?*

2.      *Did the District Court err by deciding that the Metcalf Restrictions were enforceable as anything other than a conservation easement?*

3.      *Did the District Court err by deciding that the Metcalf Restrictions were not void as violations of the rule against perpetuities?*

4.      *Did the District Court err by deciding that the Metcalf Restrictions were not void for vagueness?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      On January 3, 1996, Donna Metcalf (Metcalf) transferred a 40-acre parcel of land located near Lake Helena to Richard Thieltges (Thieltges) by warranty deed. The deed stated that:

> [Metcalf], for and in consideration of the sum of One Dollar and other valuable consideration . . . to her in hand paid by [Thieltges], . . . does by these presents grant, bargain, sell, convey, warrant and confirm unto [Thieltges] and to his heirs and assigns forever, the hereinafter-described real estate . . . .

.    .    .

2

> [Metcalf] does hereby impose and charge all of the above-described property with certain exceptions, with the covenants, restrictions, conditions and charges as follows:
>
> 1. [Thieltges] shall not engage in any activity nor shall he permit another to use the property in any way so as to reduce the quality of the stream running through the property below the water quality as it exists on the date of this conveyance, nor shall [Thieltges] utilize the riparian area surrounding the stream in any way such that the quality of the said riparian area shall be reduced below that existing at the time of this conveyance.
>
> 2. The above-described parcel has several improvements, including a log dwelling house situated thereon. No more than one single-family residence, in addition to the existing log dwelling structure, shall be placed upon this parcel, and the said parcel may not be subdivided beyond its existing forty acres.
>
> These restrictions and covenants are to run with the land and shall be binding upon [Thieltges], his successors, heirs or assigns. Enforcement shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any covenants, either to restrain violations or to recover damages.

The "covenants, restrictions, conditions and charges" imposed in paragraphs 1 and 2 will hereinafter be referred to as the Metcalf Restrictions. Thieltges recorded the deed with the Lewis and Clark County Clerk and Recorder on January 10, 1996.

¶4 On September 1, 2000, Thieltges transferred the full 40-acre parcel to the Scotts by warranty deed. The deed incorporated by reference a title insurance report, which specifically mentioned the Metcalf Restrictions. In light of this and based on their communications with Thieltges, the Scotts admit that they had actual knowledge of the Metcalf Restrictions at the time of the transfer.

¶5 On July 12, 2013, the Scotts filed a complaint in the District Court seeking permission to subdivide their 40-acre parcel. The Scotts asked the District Court to invalidate the Metcalf Restrictions and allow them to subdivide the property. In the complaint, they named the Trust and Lewis and Clark County as defendants. Lewis and

3

Clark County disclaimed an interest in the suit, and it has not participated in the case since. The Trust answered the Scotts' complaint and then filed a counterclaim asking the Court to enforce the Metcalf Restrictions.

¶6 Soon thereafter, both parties filed motions for summary judgment. They agreed there were no factual issues to be resolved, and that the case could be decided based on construction of the Metcalf Restrictions. The District Court granted summary judgment in favor of the Trust on November 12, 2014. It decided that the Metcalf Restrictions were covenants of which the Scotts had actual notice. It also decided that Metcalf and Thieltges intended the Metcalf Restrictions to run with the land. For these reasons, it concluded that the Metcalf Restrictions were enforceable against the Scotts and any other of Thieltges's successors with actual notice of them. It refused to invalidate the restrictions. The Scotts appeal.

## STANDARDS OF REVIEW

¶7 We review a district court's summary judgment ruling de novo, applying the same rule, M. R. Civ. P. 56(c)(3), that a district court does when making a summary judgment ruling. *Beaverhead Cnty. v. Mont. Ass'n of Cntys. Joint Powers Ins. Auth.*, 2014 MT 267, ¶ 11, 376 Mont. 413, 335 P.3d 721. We review a district court's conclusions of law for correctness. *Blazer v. Wall*, 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84.

4

**DISCUSSION**

¶8    *1. Did the District Court err by deciding that the Metcalf Restrictions were enforceable against the Scotts by the Trust?*

¶9    The Trust argues that the Metcalf Restrictions are real covenants enforceable against Thieltges and his successors in interest, the Scotts. The Scotts, on the other hand, argue that the Metcalf Restrictions are an easement in gross that is unenforceable against them by the Trust. For this reason, they argue that the District Court erred when it granted summary judgment in favor of the Trust. We do not wholly agree with either party. We hold that the Metcalf Restrictions are enforceable against the Scotts by the Trust as an easement in gross.

¶10    An easement in gross is a nonpossessory interest in land that benefits the holder of the easement personally. *Bos Terra, LP v. Beers*, 2015 MT 201, ¶ 11, 380 Mont. 109, ___ P.3d ___. It is distinguishable from an easement appurtenant, which benefits a particular parcel of land. *Bos Terra, LP*, ¶ 11. Both easements in gross and easements appurtenant burden a parcel of land, which is termed the servient estate. Section 70-17-103, MCA; *Bos Terra, LP*, ¶¶ 11-12. Easements appurtenant also benefit an associated parcel of land, which is termed the dominant estate. Section 70-17-103, MCA; *Bos Terra, LP*, ¶¶ 11-12. No such dominant estate exists for easements in gross. *See* § 70-17-103, MCA; *Slauson v. Marozzo Plumbing & Heating*, 2009 MT 333, ¶ 16, 353 Mont. 75, 219 P.3d 509.

¶11    We agree with the Scotts that when Metcalf and Thieltges made the Metcalf Restrictions they created easements in gross. We have held that a servitude or restriction

5

is properly classified as an easement in gross if it falls within the scope of § 70-17-102, MCA, and if there is no dominant estate that the servitude or restriction benefits. *Slauson*, ¶ 17; *Broadwater Dev., L.L.C. v. Nelson*, 2009 MT 317, ¶ 34, 352 Mont. 401, 219 P.3d 492; *Lindley v. Maggert*, 198 Mont. 197, 198-99, 645 P.2d 430, 431 (1982); *see* § 70-17-102, MCA ("servitudes upon land may be granted and held though not attached to land"); *Bos Terra, LP*, ¶ 12. Section 70-17-102(7), MCA, specifically allows the creation of easements for "the right of conserving open space to preserve park, recreational, historic, aesthetic, cultural, and natural values on or related to land."

¶12 The parties in this case agree that the Metcalf Restrictions were made for conservation purposes. Additionally, the Scotts have repeatedly argued that the benefit of the easement is not attached to any dominant estate. The Trust has not disagreed nor has it provided evidence indicating that such a dominant estate exists. Moreover, we cannot identify any estate benefited by the Metcalf Restrictions from the terms of the Restrictions or from any other part of the record. As such, there is no genuine issue that there is no dominant estate benefitted by the Metcalf Restrictions. Thus, the Metcalf Restrictions created an easement in gross since they comply with § 70-17-102(7), MCA, and they do not benefit any dominant estate.

¶13 We disagree with the Scotts' conclusion that this characterization of the Metcalf Restrictions—characterization of them as easements in gross—compels the conclusion that the Metcalf Restrictions are unenforceable against them. For an easement to be enforceable against parties that were not the original parties to the easement, the burden of the easement must pass to the original easement grantor's successors in interest and the

6

benefit of the easement must pass to the original easement grantee's successors in interest. *See Restatement (Third) of Property: Servitudes* §§ 4.4, 4.7 (2000); 4 Richard R. Powell, *Powell on Real Property* § 34.17, at 34-167 to -176, (Michael Allan Wolf ed., 2015); 7 *Thompson on Real Property*, §§ 60.02(a), 60.07(a), at 460-61, 548-49 (David A. Thomas ed., 2d ed. 2006). Since both pass in this case and since the Scotts base their arguments concerning enforceability only on whether the benefit and burden passed, we conclude that the easement was enforceable by the Trust against the Scotts.

¶14 The burden of the easement passed to the Scotts. According to § 70-20-308, MCA, an easement remains attached to a servient estate despite transfer of that estate. Section 70-20-308, MCA ("transfer of real property passes all easements attached thereto"); *Meine v. Hren Ranches, Inc.*, 2015 MT 21, ¶ 41, 378 Mont. 100, 342 P.3d 22; *see* § 70-17-111, MCA (not including transfer of a servient estate in its list of ways in which an easement may be extinguished). Here, the 40-acre parcel became the servient estate of the easement when Thieltges and Metcalf created the Metcalf Restrictions and Thieltges thereby granted an easement to Metcalf. By § 70-20-308, MCA, Thieltges's subsequent transfer of the parcel to the Scotts did not extinguish the easement.

¶15 We have suggested that an easement may not survive certain transfers where the original parties to the easement have no intent for the easement to pass to successors or where a successor to the servient estate succeeds to the estate without notice of the easement. *See Earl v. Pavex, Corp.*, 2013 MT 343, ¶ 19, 372 Mont. 476, 313 P.3d 154; *Reichert v. Weeden*, 190 Mont. 95, 99, 618 P.2d 1216, 1219 (1980). Neither requirement provides grounds for the Scotts to avoid the burden of the easement in this case. Metcalf

7

and Thieltges intended the Metcalf Restrictions to pass with the servient estate. In their deed, they specifically stated that "[t]hese restrictions and covenants are to run with the land and shall be binding upon [Thieltges], his successors, heirs or assigns." Also, the Scotts took the property with both record and actual notice of the Metcalf Restrictions. They admitted in their briefs to this Court and to the District Court that they had actual knowledge of the Metcalf Restrictions. Indeed, the restrictions were acknowledged in the deed they took from Thieltges. The Metcalf Restrictions also had been recorded with Lewis and Clark County at the time Metcalf transferred the property to Thieltges. The Scotts also, therefore, had record notice of the easement. *See Earl*, ¶ 36. For the foregoing reasons, the burden of the easement passed with the servient estate when it was transferred to the Scotts.

¶16 The benefit of the easement also passed when it was transferred from Metcalf to the Trust. Both parties assume that the Trust is Metcalf's successor in interest, presumably as the devisee of her estate. The Scotts contend that the easement, as an easement in gross, was extinguished upon Metcalf's death and that it was not devisable, descendible, or otherwise transferrable to the Trust. We disagree.

¶17 We have held that "whether or not . . . an easement may be alienated and apportioned depends upon the manner and the terms of the creation of the easement." *Lindley*, 198 Mont. at 199, 645 P.2d at 431. In *Lindley*, we decided that an easement in gross survived transfer of the benefit of the easement from the original grantee of the easement to his successor in interest. We held that the easement in gross was enforceable against the grantor's successor in interest by the grantee's successor in interest. We

8

reasoned that there was "no language in the warranty deed limiting the grant[ee]'s right to freely alienate and apportion the easement."[1] *Lindley*, 198 Mont. at 199, 645 P.2d at 431.

¶18    Similarly, in this case, neither the deed from Metcalf to Thieltges nor the deed from Thieltges to Scott contains any language limiting Metcalf's right to freely transfer the easement. As in *Lindley*, we hold that the easement in gross comprising the Metcalf Restrictions was freely transferrable. It was, therefore devisable to the Trust. The easement in gross was not rendered unenforceable by its transfer or by Metcalf's death.

¶19    We recognize that we have repeatedly stated that "with an easement in gross, no dominant tenement exists and the easement right does not pass with title to any land." *E.g.*, *Bos Terra, LP*, ¶ 11; *Broadwater Dev., L.L.C.*, ¶ 33; *Slauson*, ¶ 16; *Blazer*, ¶ 24. In concluding that the easement here survived transfer, we do not qualify that statement or abrogate the cases in which we made the statement. The statement is consistent with our holding. Rather than addressing whether the benefit of an easement may be transferred from the original benefit holder to a third person, the statement merely clarifies that the "easement right"—or the benefit of an easement—does not pass automatically with the

---

[1] The unaltered language of *Lindley* is "no language in the warranty deed limiting the grantor's right to freely alienate and apportion the easement." *Lindley*, 198 Mont. at 199, 645 P.2d at 431. This Court used the terms grantor and grantee in a different sense in *Lindley* than we do in this Opinion. For the sake of consistency in this Opinion, we have altered the language from *Lindley*. When the Court referred in *Lindley* to the grantor, it was referring to Pinnow, the party in *Lindley* who had reserved an easement for himself upon transferring land to the defendants. Pinnow subsequently transferred the benefit of the easement to the *Lindley* plaintiffs. *Lindley*, 198 Mont. at 198-99, 645 P.2d at 431. He therefore stands, relative to the defendants and plaintiffs in *Lindley*, in the same position as Metcalf does in the case at bar, relative to the Trust and the Scotts. For this reason, and since we have referred to Metcalf as the grantee of the easement in this case, we quote the language from *Lindley* but alter its use of "grantor." Regardless of the terminology, the aspect of *Lindley* that is important to our present Opinion is that the benefit of the easement may be transferred and then enforced against the owner of the servient estate.

9

title to any parcel of land. This makes sense because there is no dominant estate and the benefit of an easement in gross is not attached to any land. *See* §§ 70-17-102 and -103, MCA.

¶20 We also recognize that our holding—allowing Metcalf to transfer the benefit of her easement in gross absent language in the deed limiting her right to do so—is at odds with the laws of many other jurisdictions. Most jurisdictions in the United States strictly limit the transfer of easements in gross. *See Powell on Real Property* §§ 34.02[2][d], 34.16, at 34-19 to -20, 34-163 to -167; *Thompson on Real Property*, § 60.07(c), 552-55. However, our law governing easements has not always tracked the rule followed by the majority of states, and we do not feel compelled to follow the majority rule here. *Compare Reichert v. Weeden*, 190 Mont. 95, 618 P.2d 1216 (1980) (recognizing a negative easement restricting the sale of alcohol on the servient estate) *with Thompson on Real Property*, § 60.02(e)(1), 464-68 (stating that courts are reluctant to recognize negative easements for anything but access to light, air, water, and lateral support). Moreover, our conclusion is not wholly inconsistent with the jurisprudence of the rest of the country. For example, the *Restatement (Third) of Property* states that benefits of servitudes in gross are transferrable and devolve either as property of their owners or as contractual obligations of their obligor. *Restatement (Third) of Property: Servitudes* § 5.8 (citing cases from Colorado, Florida, Georgia, Illinois, and Wisconsin, in addition to this Court's decision in *Lindley*). We do not adopt the Restatement, but we note that we have quoted it approvingly in the past and we cite it here as authority that our holding in this case is not wholly unique.

10

¶21 For the foregoing reasons, we conclude the Metcalf Restrictions created an easement in gross, and that the benefit of the easement passed to the Trust and that the burden of the easement passed to the Scotts. Because we find the parties' arguments to the contrary unpersuasive, we conclude that the Metcalf Restrictions are enforceable against the Scotts by the Trust as an easement in gross.

¶22 *2. Did the District Court err by deciding that the Metcalf Restrictions were enforceable as anything other than a conservation easement?*

¶23 The Scotts argue that the Metcalf Restrictions should not be enforced because, based on their subject matter, a Title 76, Chapter 6, MCA, conservation easement was the only appropriate means of enforcing the Metcalf Restrictions. They argue that the statutory requirements for creating a conservation easement were not complied with and that the Metcalf Restrictions were invalid as a result.

¶24 We disagree. As discussed above, § 70-17-102, MCA, specifically allows creation of servitudes for conservation purposes. Moreover, § 76-6-105(2), MCA, states that Title 76, Chapter 6, MCA, governing conservation easements, "may not be construed to imply that any easement, covenant, condition, or restriction that does not have the benefit of this chapter is not enforceable based on any provisions of this chapter." The Scotts' argument contradicts the plain language of § 76-6-105(2), MCA. By its terms, Title 76, Chapter 6, MCA, conservation easements provide nonexclusive means of conserving land. Conservation easements do not displace the servitudes specified in other parts of the code, including § 70-17-102, MCA. Section 76-6-105(2), MCA. The Metcalf

11

Restrictions are not unenforceable simply because they were not created as a Title 76, Chapter 6, MCA, conservation easement.

¶25   *3. Did the District Court err by deciding that the Metcalf Restrictions were not void as violations of the rule against perpetuities?*

¶26   The Scotts also argue that the easement created by the Metcalf Restrictions is a nonvested property interest and, for this reason, that it violates § 72-2-1002, MCA, Montana's rule against perpetuities. We disagree.

¶27   Section 72-2-1002, MCA, states that "a nonvested property interest is invalid unless" certain criteria are met. However, despite the relatively broad language of § 72-2-1002, MCA, the rule does not apply to all nonvested property interests. Section 72-2-1005(1), MCA, states that "Section 72-2-1002 does not apply to: (1) a nonvested property interest . . . arising out of a nondonative transfer." Section 72-2-1005(1), MCA, lists several exceptions to this rule, none of which is applicable here.

¶28   The Metcalf Restrictions easement arose out of a nondonative transfer. It arose when Metcalf transferred her property to Thieltges in exchange for "valuable consideration . . . to her in hand paid." Thus, even if we assume that the Scotts are correct when they argue that the easement is nonvested, the rule against perpetuities does not apply to the easement. The Metcalf Restrictions do not violate the rule against perpetuities.

¶29   *4. Did the District Court err by deciding that the Metcalf Restrictions were not void for vagueness?*

¶30   The Scotts argue that the portion of the Metcalf Restrictions preventing Thieltges and his successors from using the land in any way that would reduce the quality of the

12

stream running through the property or that would reduce the quality of the riparian area is too ambiguous to be enforceable. Citing our decision in *Town & Country Estates Ass'n v. Slater*, 227 Mont. 489, 493, 740 P.2d 668, 671 (1987), the Scotts argue that the "standard of approval is too vague to be enforceable."

¶31 We decline to address this argument. Neither party contends that the Scotts' use of the property has reduced the quality of the riparian area or the quality of the stream. Neither party contends that the Scotts have breached this portion of the easement. As such, the meaning of the restriction is not actually at issue here. To render a decision regarding the enforceability of the riparian and water quality provision, we would be required to rule without the benefit of actual facts or a concrete controversy. As we have stated, albeit under somewhat different circumstances, "[t]his Court cannot declare that the proposed use will be inconsistent with the reserved easement on the basis of speculation as to possible future uses." *Lindley*, 198 Mont. at 199, 645 P.2d at 432. We will not interpret the riparian and water quality provisions without the benefit of facts to which we may apply the provisions.

**CONCLUSION**

¶32 The District Court did not err by granting summary judgment in favor of the Trust. When Metcalf and Thieltges created the Metcalf Restrictions, Thieltges granted an easement in gross to Metcalf. It was immaterial to the creation of the easement that the easement might have been enforced via a Title 76, Chapter 6, MCA, conservation easement. The easement also was not void for violating the rule against perpetuities. The terms of the easement did not prevent its transfer and the easement was not

13

extinguished when Metcalf died or when Metcalf transferred the easement to the Trust. It also was not extinguished when Thieltges transferred the servient estate to the Scotts. For these reasons, the District Court correctly concluded that the Metcalf Restrictions could be enforced by the Trust against the Scotts. We affirm its decision to grant summary judgment in favor of the Trust.


/S/ MICHAEL E WHEAT

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON